[Cite as *State v. Ward*, 2014-Ohio-990.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2013-07-059 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>3/17/2014 |
| - vs - | : | |
| | : | |
| MICHAEL W. WARD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2012 CRB 06475

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

R. Daniel Hannon and Robert F. Benintendi, 10 South Third Street, Batavia, Ohio 45103, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Michael W. Ward, appeals from his conviction in the Clermont County Municipal Court after a jury found him guilty of three counts of furnishing beer or intoxicating liquor to underage persons and one count of sexual imposition. For the reasons outlined below, we affirm.

{¶ 2} On December 10, 2012, four complaints were filed in the Clermont County

Municipal Court charging Ward with the above named offenses. The charges stemmed from the events that took place at Ward's ex-wife's house on the night and early morning hours of November 17 and November 18, 2012. The matter ultimately proceeded to a two-day jury trial that concluded on June 19, 2013. During trial, Ward, through counsel, admitted to the three counts of furnishing beer or intoxicating liquor to underage persons. Therefore, for purposes of this appeal, we will limit our discussion to the single sexual imposition charge.

{¶ 3} At trial, H.C. testified that on the evening of November 17, 2012, Ward's daughter, M.W., invited her and several of their male classmates to her mother's house for the evening. At this time, H.C. had been friends with M.W. for approximately six months. It is undisputed that Ward had agreed to spend the night at his ex-wife's house to supervise his daughter and her friends while his ex-wife was out of town. It is also undisputed that Ward, who was 46 years old at the time, purchased and provided vodka to M.W., H.C., and their male classmates, J.F., T.C., and I.I. that evening. At all times relevant, M.W., H.C., J.F., T.C., and I.I. were between the ages of 15 to 17 years old.

{¶ 4} According to H.C.'s testimony, shortly after arriving at M.W.'s mother's house, Ward entered the house with a bottle of vodka. H.C. admits to consuming a small amount of vodka provided by Ward that evening, but denies that she was intoxicated. H.C. also claims Ward was in the house while her and her friends were drinking the vodka and that Ward was drinking whiskey.

{¶ 5} As the night progressed, H.C. testified Ward came outside where the group was sitting around the backyard fire pit. During this time, H.C. testified Ward continued to drink whiskey as they sat around the fire pit talking. While outside, H.C. testified that Ward touched her hip when she went to change the music, but did not think anything of it. H.C.'s boyfriend, J.F., also testified that he saw Ward attempt to dance with H.C. and rub her feet after she complained of them hurting. Although finding it strange, J.F. likewise testified he

- 2 -

did not think anything of it.

{¶ 6} At around 2:00 a.m. that morning, H.C. and M.W. went upstairs to sleep in M.W.'s room, whereas J.F., T.C., and I.I. went downstairs to sleep in the basement. Thereafter, at approximately 4:00 a.m., H.C. testified she awoke to find a "big hand" touching her hip and stomach. Turning her head, H.C. testified she saw Ward leaning down on the side of the bed reaching up to touch her. However, because she was scared of what Ward would do if she screamed, H.C. testified that she pretended to be asleep. According to H.C.'s testimony, Ward continued touching her stomach, hip, buttocks, and breasts for what seemed like an hour. During this time, H.C. testified she attempted to wake M.W. by pinching her side, but was unsuccessful in waking her up. H.C. also testified that she called J.F. from her cell phone, but he did not answer. J.F. later testified he saw H.C. had called his cell phone, but thought that H.C. and M.W. were just playing a joke.

{¶ 7} Continuing, H.C. testified Ward then tried to pick her up and lift her off the bed. Fearing Ward was going to try and take her into a different room, H.C. testified she began yelling M.W.'s name and shaking her so that she would wake up. As H.C. testified:

> I was yelling her name so that she would wake up and [her] dad would leave the room and I yelled, '[M.W., M.W., M.W.], I have to go to the bathroom,' and I finally just shook her and I said, '[M.W.], I have to go to the bathroom.' And that's when I saw [her] dad like crawl on his hands and knees out of her room and then that's when [she] woke up and she was like, 'What, what?' And I was like, 'Your dad was just touching me, your dad was just touching me, I swear he was just touching me.'

H.C. then testified she got out of bed and immediately ran to the basement where the boys were sleeping.

{¶ 8} Once she got to the basement, H.C. testified she woke up J.F. and told him everything that had happened. In response, J.F. testified he told H.C. they should leave the house. However, H.C. testified she did not want to leave the house because she could hear

M.W. yelling at her father and she was too scared to go upstairs.

{¶ 9} Several hours later, sometime between 6:00 and 7:00 a.m., H.C. testified she and J.F. got up and quietly exited the house without confronting Ward who was asleep on the couch. After leaving the house, H.C. testified she and J.F. went to her house and told her father what had occurred. H.C.'s parents then took her to the Union Township Police Department where she reported her allegations and provided a written statement to police.

{¶ 10} The state also introduced testimony from J.F. and T.C., H.C.'s cousin, as well as H.C.'s uncle (Uncle) and H.C.'s father (Father). As relevant here, after H.C. told Father what happened to her that morning, Father called Uncle and informed him of H.C's allegations. After hearing of the allegations, Uncle called T.C., his son, who had spent the night at M.W.'s mother's house and was still there. As Uncle testified, although eventually taking the phone, Ward initially refused to get on the phone claiming that he did not do anything and that he did not know what he was talking about. Thereafter, upon briefly speaking with Uncle on the phone, T.C. testified that Ward then ran from the house leaving the door wide open and drove away. Uncle also testified Ward called him later that afternoon, wherein Ward told Uncle he did not remember anything from the previous night because he was drunk.

{¶ 11} Father also testified he had a conversation with Ward that afternoon when he was at the Union Township Police Department speaking with Sergeant Anthony Rees. According to Father, during this call, which he placed on speaker phone, Ward claimed he did not remember anything that happened and that he did not know what was going on. The testimony of Sergeant Rees confirmed Father's testimony. In addition, Sergeant Rees testified that in addition to the statements testified to by Father, Ward also stated during his phone conversation with Father: "Well, how does [H.C.] know that it was me and not somebody else?" These statements were introduced without objection.

{¶ 12} Following this testimony, the state called W.T. to testify regarding a similar incident that occurred approximately four years earlier when she was an overnight guest of Ward's daughter while at Ward's apartment. Over Ward's objection, and after providing the jury with a limiting instruction, the trial court permitted W.T. to testify regarding Ward's alleged prior sexual misconduct towards her. The state then rested. Ward did not provided any evidence in his defense.

{¶ 13} After both parties rested, the trial court provided the jury with its final jury instructions. Including within the trial court's final jury instruction was a limiting instruction that specifically addressed W.T.'s testimony. Following deliberations, the jury found Ward guilty on all four charges. The trial court then sentenced Ward to serve a total of 75 days in jail, ordered him to pay fines of $475, and classified him a Tier I sex offender. Ward now appeals from his conviction, raising a single assignment of error for review.

{¶ 14} THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF "OTHER ACT" EVIDENCE.

{¶ 15} In his single assignment of error, Ward argues the trial court erred and abused its discretion by admitting other acts evidence through the testimony of W.T. regarding his alleged prior sexual misconduct directed towards her some four years prior. We disagree.

{¶ 16} A trial court has broad discretion in the admission and exclusion of evidence. *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. In turn, a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion is more than an error of law or judgment, but instead connotes that "the trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

- 5 -

{¶ 17} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, the Ohio Supreme Court outlined a three-part test for courts to use when determining the admissibility of so-called "other acts" evidence. First, the court should "consider whether the other act evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20. Next, the court should determine if "evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other act evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Finally, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* This is the same essential test this court, as well as other courts throughout the state, have routinely applied in addressing challenges to the admissibility of "other acts" evidence. *See generally State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 33; *State v. Shipley*, 10th Dist. Franklin No. 12AP-948, 2013-Ohio-4055, ¶ 61.

{¶ 18} In applying the first step in the *Williams* analysis, Ward argues W.T.'s testimony was completely irrelevant and gratuitous to the issues at hand. However, in making this argument, Ward asserts the disputed testimony was inadmissible as it did not fall into any of the enumerated exceptions allowing for the admission of other acts evidence under R.C. 2945.59 and Evid.R. 404(B), thereby violating the second step of the *Williams* three-part test. Ward also argues W.T.'s testimony is not admissible because its probative value is substantially outweighed by the danger of unfair prejudice, thereby violating the third step of the *Williams* three-part test. For ease of discussion, we will likewise tailor our analysis to the general principles outlined in the second and third steps of the *Williams* three-part test.

{¶ 19} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or

inclination to commit crime or that he acted in conformity with bad character." *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 19, quoting *Williams* at ¶ 15. The General Assembly, however, has codified certain exceptions to the common law regarding the admission of other acts evidence in R.C. 2945.59, which states:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

The Ohio Supreme Court promulgated a similar exception in Evid.R. 404(B), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 20} Both the statute and the rule "codify the common law with respect to evidence of other acts of wrongdoing," and preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait. *Williams*, 2012-Ohio-5695, at ¶ 16; *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 39-40. However, neither the statute, nor the rule "requires that the other act be 'like' or 'similar' to the crime charged, as long as the prior act tends to show one of the enumerated factors." *State v. Wightman*, 12th Dist. Fayette No. CA2006-12-045, 2008-Ohio-95, ¶ 26, quoting *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 19. Simply stated, "[t]o be admissible, the other-act evidence must tend to show by substantial proof one or more of the things that the rule or statute enumerates," such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Blankenburg*, 197 Ohio

App.3d 201, 2012-Ohio-1289, ¶ 68 (12th Dist.).

{¶ 21} In this case, Ward argues W.T.'s testimony failed to meet the "substantial proof" requirement as her testimony was uncorroborated, unsubstantiated, and referenced events that were too remote in time. In support of this claim, Ward relies on our prior decision in *State v. Henderson*, 76 Ohio App.3d 290 (12th Dist.1991). In *Henderson*, the appellant, Jerry Wayne Henderson, was convicted of gross sexual imposition with a specification that he purposely compelled the victim, his then 13-year-old daughter, to submit by force or threat of force. *Id.* at 292. The charge stemmed from an alleged incident wherein Henderson fondled the victim's breast and touched the inside of her thigh. *Id.*

{¶ 22} To establish the element of force, the state had the victim testify about an alleged prior episode of sexual misconduct, which occurred when she was just five or six years old. *Id.* According to the victim's testimony, after bathing her, Henderson took off his clothes and laid down beside her and instructed her to fondle his penis. *Id.* The victim also testified Henderson told her he wanted to show her "how babies were born." *Id.* Over objection, the trial court admitted the testimony after instructing the jury the testimony could only be used for the limited purpose of determining whether the element of force, or threat of force, had been established to support a conviction for gross sexual imposition. *Id.*

{¶ 23} On appeal, this court determined the trial court should have excluded the victim's testimony regarding Henderson's alleged past sexual misconduct. In so holding, this court found the prerequisites necessary to admit other act evidence under R.C. 2945.59 and Evid.R. 404(B) were "also applicable when like evidence is used to prove the element of force or threat of force on an unrelated charge." *Id.* at 295. Applying these principles, this court determined the victim's testimony regarding Henderson's prior alleged sexual misconduct occurring some seven or eight years before was "simply too remote to be admissible." *Id.*

- 8 -

{¶ 24} This court's decision, however, was not based solely on the temporal proximity, or lack thereof, between Henderson's alleged prior sexual misconduct and the new unrelated charge. Rather, this court's decision was driven by what we then characterized as "another more fundamental concern;" namely, the "quality of the evidence" presented. *Henderson*, 76 Ohio App.3d at 295. As this court stated:

> In the case sub judice, the victim did not tell anyone about appellant's sexual misconduct at the time the misconduct allegedly occurred. It is ironic to note that even if the victim had told the authorities about the incident and criminal charges were brought against appellant at that time, the victim's age would have probably precluded her from testifying. Moreover, no other witness testified at the trial about the prior incident.

*Id.*

This court then concluded by stating the following:

> Uncorroborated and unsubstantiated evidence of this nature is fraught with danger and falls far short of substantial proof that appellant committed the prior act. As a result, the use of questionable evidence about appellant's past sexual misconduct to prove an element of an unrelated charge was not permissible.

*Id.*

{¶ 25} Although somewhat similar to the case at bar, we find Ward's reliance on our decision in *Henderson* misplaced. Contrary to Ward's claim otherwise, *Henderson* does not stand for the proposition that independent evidence must be submitted to corroborate other acts evidence in all cases.[1] This is particularly true considering our decision in *Henderson* has never been cited by this court to support such a contention in the over two decades since its release. Our decision in *Henderson*, therefore, must be limited to the facts and circumstances of that case, which, as noted above, created some question as to the quality

---

1. This appears to be a common misconception as the Fourth District Court of Appeals reached the same conclusion in *State v. Wright*, 4th Dist. Washington No. 00CA39, 2001 WL 1627643 (Dec. 6, 2001). The Fourth District even certified a conflict between *Wright* and *Henderson*. The Ohio Supreme Court, however, dismissed the matter without issuing a decision after finding it was improvidently certified as there was no conflict between the two cases. *State v. Wright*, 98 Ohio St.3d 1212, 2003-Ohio-1488, ¶ 1.

of the alleged other acts evidence presented. This included the fact that the victim failed to inform anyone about Henderson's prior alleged sexual misconduct and the fact that no other witnesses testified regarding his alleged conduct.

{¶ 26} Even more telling, however, is that following its release, this court has since taken the exact opposite approach for which Ward now advocates. This is most evident from our decision in *State v. Phillips*, 12th Dist. Preble No. CA2001-01-002, 2001 WL 1112668 (Sept. 24, 2001), a case in which we specifically found "that it is not necessary to present independent evidence of 'other acts,' and that a victim's testimony alone can constitute 'substantial proof' of the other acts." *Id.* at *3. This is the same approach advanced by a number of other appellate courts throughout the state. *See State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 22; *see also State v. King*, 5th Dist. Richland No. 08-CA-335, 2010-Ohio-4844, ¶ 45. This court, therefore, will apply the principles outlined in *Phillips* and not *Henderson*.

{¶ 27} Turning to the facts of this case, over Ward's objection and following the trial court issuing a limiting instruction, W.T. testified regarding a similar incident that occurred with her approximately four years prior. According to W.T., Ward picked her and his daughter up from the mall and took them to his apartment for a sleep over. Ward was the only adult present during this time. Continuing, W.T. testified that after arriving at Ward's apartment, she and M.W. watched movies and television in the living room. As the night progressed, Ward informed the pair that he would sleep on the couch and that they could sleep in his room because it had a bigger bed that would fit both girls. The girls agreed and went upstairs to Ward's room to watch television. However, after going to bed in Ward's room, W.T. testified she woke up to find Ward's hand inside of her shirt touching her breasts. As W.T. testified:

> And I looked and I could see it was him on all fours, he was

wearing all black, dark colors, and I could tell it was him and at that point I didn't know what to do so I put the covers more tightly around me and I kind of like pretended I didn't notice it because I was scared if I woke up he'd do something worse[.]

{¶ 28} W.T. then testified Ward left the room only to come back "and he did the same thing again[.]" In response, W.T. testified she rolled over next to M.W. who was sleeping in the same bed "so I'd be like snug on her so he couldn't get near me[.]" W.T. then testified Ward exited the room only to return for a third time when he laid down on the bed next to M.W. However, Ward's daughter protested immediately saying "Get out, you're so weird." W.T. testified Ward then left the room and did not return.

{¶ 29} After Ward left, W.T. testified she and M.W. went to the bathroom and came back to bed. When asked if she really had to use the bathroom at that time, W.T. testified she did not and that she "was just scared and I wanted her to wake up so I wouldn't be alone." W.T. then testified she was afraid to go back to bed so she watched television all night until she was able to call her mother to take her home. The following day, W.T. told police about her allegations against Ward. W.T. also provided police with a written statement advancing the same basic claims against Ward. However, for reasons unknown, no charges were ever filed against Ward in that case.

{¶ 30} After a thorough review of the record, we find W.T.'s testimony constitutes substantial proof of Ward's alleged prior sexual misconduct. Here, unlike in *Henderson*, W.T.'s testimony addressed an event that allegedly occurred four years prior, thereby falling within a reasonable timeframe. *See, e.g., State v. Powers*, 12th Dist. Clinton No. CA2006-01-002, 2006-Ohio-6547, ¶ 12 (finding testimony that appellant instructed his young daughter to fondle his penis some 12 years earlier not too remote in time to be inadmissible as other acts evidence); *see also State v. Murray*, 8th Dist. Cuyahoga 91268, 2009-Ohio-2580, ¶ 24 (finding 17 years between the two incidents did not render the other acts evidence

- 11 -

inadmissible due to the "strong similarities between the incidents").

**{¶ 31}** Moreover, following Ward's alleged prior sexual misconduct against her, W.T. immediately went to police with her claims. W.T.'s testimony is consistent with the allegations contained in both her written statement and the police report. Furthermore, although no charges were ultimately filed, there is no evidence that W.T. has ever waivered or recanted her allegations against Ward. As this court has stated previously, "[o]ther-acts evidence need be proved only by substantial proof, not proof beyond a reasonable doubt." *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 14. Therefore, unlike the testimony presented in *Henderson*, and in light of the principles outlined by this court in *Phillips*, we find W.T.'s testimony, standing alone, was sufficient to constitute substantial proof of Ward's alleged prior sexual misconduct.

**{¶ 32}** Our analysis, however, does not end there. As noted above, to be admissible the other-act evidence must not only be supported by substantial proof, but also falls into one or more of the enumerated exceptions found in R.C. 2945.59 or Evid.R. 404(B). These enumerated exceptions include such things as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Here, the trial court found W.T.'s testimony could be used to prove Ward's (1) motive or intent, (2) whether Ward had a common scheme, plan or system in engaging in the alleged conduct, or (3) to prove the absence of mistake or accident. We find no error in the trial court's decision.

**{¶ 33}** The Ohio Supreme Court's decision in *Williams* is dispositive in this matter. In *Williams*, the defendant, Van Williams, was convicted of rape, gross sexual imposition, and unlawful sexual conduct with a minor after he was found guilty of sexually abusing J.H., a 14-year-old boy he had mentored at his church. *Id*, 2012-Ohio-5695 at ¶ 9. At trial, the trial court admitted evidence that Williams had a similar relationship some 11 years before with A.B., a 16-year-old boy, who he coached as part of a swim team. *Id.* at ¶ 5. The Eighth

District Court of Appeals reversed the trial court's decision and the Ohio Supreme Court accepted the matter for review.

{¶ 34} After outlining the three-part test referenced above, the Ohio Supreme Court then determined A.B.'s testimony regarding Williams prior sexual misconduct was relevant because it tended to show his motive and the preparation and plan he executed to target, mentor, groom, and abuse teenage boys, all of which could corroborate J.H.'s testimony. *Id.* at ¶ 22. Next, the Supreme Court determined the state did not offer evidence of Williams's relationship with A.B. to show abusing J.H. was in conformity with Williams's character. *Id.* at ¶ 23. In so holding, the Supreme Court specifically noted "the trial court gave two limiting instructions that this evidence was not being offered to prove Williams's character – one just prior to the testimony of A.B., and one prior to deliberation." *Id.* Finally, the Supreme Court found the evidence was not unduly prejudicial "because the trial court instructed the jury that this evidence could not be considered to show that Williams had acted in conformity with a character trait." *Id.* at ¶ 24. According to the Supreme Court, "[t]his instruction lessened the prejudicial effect of A.B.'s testimony, and A.B. corroborated J.H.'s testimony about the sexual abuse, which had been denied by Williams." *Id.*

{¶ 35} Similar to the facts at issue in *Williams*, the evidence in this case clearly indicates Ward had a history of targeting his daughter's teenage friends under his supervision while they slept. In turn, just as the trial court found, W.T.'s testimony regarding Ward's alleged prior sexual misconduct was relevant in establishing Ward's motive or intent, whether he had a common scheme, plan or system in engaging in the alleged conduct, as well as to prove the absence of mistake or accident. *See, e.g., State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 40 (applying *Williams* to find the trial court did not err in admitting other acts evidence where it helped prove appellant's motive, preparation and plan to target teenage girls and attempt to persuade them to have sex with him by telling them it

was an initiation ritual, and that following initiation, being a member of the group would imbue them with special powers). Our decision is further supported by the state's evidence indicating Ward subsequently denied having any knowledge regarding H.C.'s allegations and questioned how H.C. was able to identify him as the alleged perpetrator.

{¶ 36} Moreover, just like in *Williams*, the trial court provided a limiting instruction before W.T. testified and again as part of its final jury instructions. Specifically, as the trial court instructed the jury immediately before W.T. testified:

> Ladies and gentlemen, you are about to hear evidence concerning an alleged incident in 2009 involving Mr. Ward. This evidence is only being offered and may only be considered by you in determining whether Mr. Ward had a common scheme, plan or system in engaging in the conduct alleged and in determining Mr. Ward's motive and/or intent and the absence of mistake or accident in engaging in the alleged conduct with [H.C.] You may not consider this evidence as proof of Mr. Ward's character in order to show that he acted in conformity with that character.

This limiting instruction is nearly identical to the trial court's final instructions that were provided to the jury before deliberations. "A presumption exists that the jury has followed the instructions given to it by the trial court." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194, quoting *State v. Murphy*, 65 Ohio St.3d 554, 584 (1992). There is nothing in the record that suggests the jury did not follow the trial court's instructions.

{¶ 37} Finally, in light of the trial court's limiting instructions, as well as the Ohio Supreme Court's decision in *Williams*, we do not find that the trial court erred when it found that the prejudicial effect of W.T.'s testimony did not outweigh its probative value. Unfairly prejudicial evidence is that which might result in an improper basis for a jury decision. *State v. Bowman*, 144 Ohio App.3d 179, 186 (12th Dist.2001). None of the evidence admitted here meets this standard. As noted above, W.T.'s testimony was properly admitted as other acts evidence to prove Ward's motive or intent, whether Ward had a common scheme, plan or

system in engaging in the alleged conduct, or to show Ward's alleged conduct exhibited an absence of mistake or accident. Furthermore, based on the facts of this case, the trial court minimized any potential prejudice by providing a limiting instruction to the jury both before W.T. testified and again before submitting the case to the jury. *See, e.g., State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 19 (applying *Williams* to find the trial court did not abuse its discretion in admitting other acts evidence to establish motive and that appellant had a plan of targeting for sexual activity teenage girls who spent the night at his house after drinking alcohol).

{¶ 38} Despite this, Ward argues W.T.'s testimony was not admissible as it was not proper to prove his motive or intent as they are not "material" elements to the crime. Ward advances the same argument in regards to the absence of mistake or accident. As before, the Ohio Supreme Court's decision in *Williams* is dispositive of this issue. As noted by the Supreme Court in *Williams*, although R.C. 2945.59 does refer to materiality as a requirement for admissibility, Evid.R. 404(B) contains no such reference or requirement. *Williams*, 2012-Ohio-5695 at ¶ 17. Instead, Evid.R. 404(B) "precludes the admission of evidence of crimes, wrongs, or acts offered to prove the character of an accused in order to demonstrate conforming conduct, and it affords the trial court discretion to admit evidence of other crimes, wrongs, or acts for 'other purposes,' including, but not limited to, those set forth in the rule." *Id.* Therefore, "the rule affords broad discretion to the trial judge regarding the admission of other acts evidence." *Id.* Accordingly, based on *Williams*, Ward's argument to the contrary is without merit and overruled.

{¶ 39} Ward also argues W.T.'s testimony is not proper to prove scheme, plan or system in engaging in the alleged conduct because his identity was not at issue and because it does not form a part of the immediate background of the alleged crime. The Ohio Supreme Court's decision in *Williams* is also dispositive of this issue. As stated by the Supreme Court

in *Williams*, pursuant to Evid.R. 404(B) "evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, even if the identity of an accused or the immediate background of a crime is not at issue." *Id.* at ¶ 2. Therefore, based on *Williams*, Ward's argument to the contrary is likewise without merit and overruled.

**{¶ 40}** As noted above, the trial court is afforded broad discretion regarding the admission of other acts evidence. After a thorough review of the record, we find no abuse of discretion in the trial court's decision admitting W.T.'s testimony regarding Ward's alleged prior sexual misconduct. Accordingly, Ward's single assignment of error is overruled.

**{¶ 41}** Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J, concur.