[Cite as *State v. Rogers*, 2018-Ohio-1356.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-08-112 |
| | : | O P I N I O N |
| - vs - | | 4/9/2018 |
| | : | |
| GARY W. ROGERS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-12-1889


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Gary W. Rogers, appeals his conviction and sentence for felonious assault in the Butler County Court of Common Pleas.

{¶ 2} On February 1, 2017, the Butler County Grand Jury returned an indictment charging Rogers with felonious assault, a second-degree felony. The matter proceeded to a two-day jury trial commencing on May 31, 2017.

{¶ 3} Mark Schlensker testified on behalf of the state. Mark testified that at approximately 4:00 a.m. on September 3, 2017 he received a call from his ex-wife, Wendy Schlensker. Mark described Wendy's demeanor on the phone as scared and very frantic. Wendy was crying and informed Mark she was in trouble and needed him to pick her up from Rogers' home in Butler County. Wendy lived at the residence with Rogers, who was her boyfriend at the time. Mark drove to the address and parked outside where he observed Wendy and Rogers arguing in front of the residence.

{¶ 4} Mark testified that Wendy informed Rogers her ex-husband was the driver of the vehicle and Rogers walked over to his vehicle. Then, Mark turned to look at Wendy and Rogers punched him in the side of his head three or four times. Rogers proceeded to open the driver's side door and attempted to remove Mark from the vehicle. As a result, Mark became tangled in his seatbelt with his body halfway out of the vehicle. Wendy interjected herself into the fray, which provided an opportunity for Mark to reposition himself in the driver's seat. Rogers continued to strike Mark in the head with punches while reaching around Wendy. Then, Rogers and Wendy moved away from the vehicle for a moment and Mark drove away.

{¶ 5} Mark sustained injuries during the altercation with Rogers and was treated at a nearby hospital for a facial laceration and swelling, the loss of a piece of his ear, knee scrapes, and a fractured nose. The state introduced photographic evidence depicting the injuries sustained by Mark and blood inside Mark's vehicle. Mark stated his injuries remained visible for months and his fractured nose required surgery. Mark testified he has a concealed handgun license and that he always keeps a .45 caliber handgun holstered underneath his driver's side seat. Mark stated he did not attempt to reach for the handgun the night of the altercation.

{¶ 6} Before Mark's testimony, the state played a recording of a 911 call placed on

September 3, 2016 by Rogers' neighbor. The neighbor stated that an altercation awoke her and that she observed two people assaulting someone by a car. Officer Lanny Ash testified that he was dispatched to Rogers' residence regarding an altercation. Ash made contact with Wendy at the residence. He described her demeanor as frantic. Ash testified he had met Wendy before September 3, 2016 because he arrested Rogers sometime earlier for domestic violence in which Wendy was the victim.

{¶ 7} Rogers testified on his own behalf. Rogers stated that he and Wendy engaged in an argument on September 3, 2016. According to Rogers, Wendy yelled at him, threw his belongings around the house and yard, threatened him with a hammer, and discharged a pistol inside his home. While outside, Rogers observed a small vehicle make "a real dramatic turn" and then "come flying back up the street" where the driver "locked it up right there in front of [his] house * * *." Rogers walked to the driver's side of the vehicle and informed Mark he did not need to be there and that he should leave. During this interaction, Wendy repeatedly hit Rogers. Then, Mark opened the vehicle door and threatened to shoot Rogers. Wendy continued to hit Rogers, who observed Mark reach for a black handgun under the driver's side seat. Rogers pushed Wendy to the side, lunged forward, grabbed Mark's wrist, and "stretched him back in his car * * *." Rogers told Mark to drop the handgun. Mark refused to drop the handgun and Rogers hit him "once or twice," which caused Mark to drop the handgun to the floor of the vehicle. Rogers unsuccessfully attempted to pull Mark from the vehicle away from the handgun.

{¶ 8} At this point, Wendy repositioned herself between Rogers and Mark and resumed hitting Rogers. While Wendy remained between Mark and Rogers, Mark reached again for the handgun and Rogers punched him around Wendy. Then, Rogers pushed Wendy aside and Mark's holstered handgun "went flying into the middle of the street." Rogers struck Mark two more times, and once Mark surrendered, Rogers backed away from

the vehicle.

{¶ 9} Wendy testified regarding the argument with Rogers and the phone call to Mark. Wendy stated Rogers punched Mark several times around her and that her back was facing Mark during the altercation. Wendy testified she did not observe Mark exit the vehicle or Rogers attempt to pull him from the vehicle. Additionally, Wendy did not observe a handgun at any point during the altercation and did not hear Rogers inform Mark to drop a handgun.

{¶ 10} At the close of the evidence, the trial court provided the jury with final jury instructions, which included instructions on the affirmative defense of self-defense and the inferior degree offense of aggravated assault, a fourth-degree felony. The jury found Rogers guilty of felonious assault and not guilty of aggravated assault. On July 10, 2017, the trial court sentenced Rogers to a three-year prison term.

{¶ 11} Rogers timely appealed from his conviction and sentence.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ENTERING A JUDGMENT OF GUILTY BASED UPON INCONSISTENT JURY VERDICTS.

{¶ 14} Rogers contends that a not guilty verdict for the inferior degree offense of aggravated assault is inconsistent with a guilty verdict for felonious assault. Rogers argues this error requires this court to vacate his conviction and remand the matter for a new trial.

{¶ 15} The Ohio Supreme Court has distinguished between a lesser-included offense and an offense that is an "inferior degree" of the indicted offense. *See State v. Deem*, 40 Ohio St.3d 205, 208-09 (1988) (defining lesser included offense as an offense having a penalty of lesser degree than the indicted offense and which, as statutorily defined, also being committed, and some element of the greater offense is not required to prove the commission of the lesser offense); *see id.* (defining an inferior degree offense as one with

- 4 -

identical elements, except for one or more additional mitigating elements).

{¶ 16} R.C. 2903.11(A)(1) defines felonious assault, in pertinent part, as no person shall knowingly cause serious physical harm to another. R.C. 2903.12 defines aggravated assault, in pertinent part, as "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * *." "Because the elements of aggravated assault are identical to the elements of felonious assault, except for the additional mitigating element of provocation, aggravated assault is an offense of an inferior degree of felonious assault." *State v. McOsker*, 12th Dist. Clermont No. CA2016-05-025, 2017-Ohio-247, ¶ 14.

{¶ 17} Rogers cites a Tenth District opinion to support his argument that the jury returned inconsistent verdicts requiring reversal of his conviction. *See State v. Howard*, 10th Dist. Franklin No. 06AP-1273, 2007-Ohio-5659. In *Howard*, the court reversed a conviction for aggravated menacing after finding the verdict inconsistent with the jury's not guilty verdict for menacing on the same count. *Id*. at ¶ 1, 10. The court reasoned that menacing is a lesser-included offense of aggravated menacing, and because the latter cannot be committed without committing the former, the inconsistent verdicts required reversal. *Id*. at ¶ 5. Rogers contends that this reasoning applies to the present case because an inferior degree offense versus a lesser-included offense is a "distinction without a difference." However, contrary to Rogers' argument, a distinction exists between the facts of this case and *Howard* because one may be convicted of felonious assault and not convicted of aggravated assault.

{¶ 18} Rogers further contends that interpreting the jury's findings of guilty for felonious and not guilty for aggravated assault requires a court to assume the jurors found Rogers failed to meet his burden in proving serious provocation. However, such conclusion

- 5 -

is clearly demonstrated by the jury's findings and does not require an assumption to be made by the court. "[A] jury is presumed to follow instructions given by the trial court." *State v. Swing*, 12th Dist. Clermont No. CA2016-10-068, 2017-Ohio-8039, ¶ 81. The trial court instructed the jury that it must consider the offense of felonious assault and if it found the state failed to prove beyond a reasonable doubt all the essential elements of the offense of felonious assault, then the jury was to find Rogers "not guilty and not consider the inferior degree offense of **aggravated assault.**" If the jury found him guilty of felonious assault, then the jury was to continue deliberations "to decide whether [Rogers proved] by the greater weight of the evidence that he acted while he was under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite [Rogers] into using deadly force." The trial court further instructed the jury that if the jury found Rogers met his burden, then the jury must find Rogers guilty of aggravated assault and not guilty of felonious assault.

{¶ 19} Therefore, presuming the jurors followed the trial court's instructions, the record clearly indicates the jury found the state proved every element of felonious assault beyond a reasonable doubt. Then, as instructed by the trial court, the jury continued deliberations to determine whether Rogers proved serious provocation by the greater weight of the evidence. The jury's determinations of guilty for felonious assault and not guilty for aggravated assault clearly indicate the jury found Rogers failed to meet his burden with respect to the mitigating element of serious provocation because the elements of the two crimes are identical, except for the mitigating element.

{¶ 20} Accordingly, Rogers' first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} APPELLANT WAS DENIED THE RIGHT TO DUE PROCESS AND A FAIR TRIAL BY THE ADMISSION OF IRRELEVANT PRIOR BAD ACTS EVIDENCE.

{¶ 23}   Rogers argues he suffered unfair prejudice at trial when the trial court admitted improper character evidence concerning a domestic violence charge involving him and Wendy because the only purpose in admitting the evidence was to demonstrate his bad character.

{¶ 24}   Rogers failed to object to the admission of the evidence at trial; therefore, he waived all but plain error.  *See State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870, ¶ 13.  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Crim.R. 52(B).  Plain error does not exist unless the error is obvious and but for the error, the outcome of the case would have been different.  *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39.  Notice of plain error is taken with the utmost caution and only under exceptional circumstances to prevent a manifest miscarriage of justice.  *Id*.

{¶ 25}   Pursuant to Evid.R. 404(A)(1), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion * * *."  Additionally, pursuant to Evid.R. 404(B) "'[e]vidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'"  *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15.  The state concedes the exceptions listed in Evid.R. 404(A)(1)-(3) and (B) are inapplicable to the present case.  Therefore, we will not consider the statutory exceptions in our plain error analysis.

{¶ 26}   After thoroughly reviewing the record, we find the trial court did not commit plain error in admitting the evidence regarding the prior domestic violence charge.  At trial, the prosecutor solicited testimony from a responding officer that the officer had previously

- 7 -

met Wendy when he had the occasion to arrest Rogers for domestic violence. Specifically, in response to whether he had met Wendy before, the arresting officer answered affirmatively and stated that he "arrested Mr. Rogers for domestic violence some time ago prior to this incident where [Wendy] was the * * * victim * * *." The responding officer testified he did not know the outcome of the prior arrest.

{¶ 27} Since Rogers did not object to the testimony by the responding officer, the prosecutor's intent in eliciting this testimony is unclear. Nonetheless, even assuming the testimony was violative of Evid.R. 404, the testimony does not amount to plain error because but for the admission of the testimony, the outcome of the trial clearly would not have been different. As discussed below, the record contains substantial evidence of Rogers' guilt and the jury's findings regarding serious provocation and self-defense were supported by the manifest weight of the evidence. *See, e.g.*, *State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 62 (finding trial court's admission of domestic violence conviction concerning, but did not amount to plain error because outcome of the trial clearly would not have been different).

{¶ 28} The responding officer briefly testified that he had arrested Rogers some time ago for an incident that involved Rogers and Wendy. Rogers contends the testimony unfairly prejudiced his theory of the case by demonstrating his affinity to violence. However, the prosecutor neither expanded upon this testimony nor made an argument based upon the testimony in closing argument. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 40 (finding improperly admitted character evidence did not constitute plain error where the evidence was brief and primarily contextual). Rather, the focus of the trial regarded the facts supporting Rogers' conviction for felonious assault and whether Rogers met his burden with respect to proving self-defense and serious provocation. While Rogers correctly asserts the trial court did not provide a curative instruction immediately following the

testimony, it did instruct the prosecutor to move on in the line of questioning. Therefore, based on the evidence presented and the brevity of the alleged problematic testimony, Rogers fails to demonstrate how the outcome of the trial clearly would have been different.

{¶ 29} Accordingly, Rogers' second assignment of error is overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 32} Rogers argues that the guilty verdict for felonious assault was against the manifest weight of the evidence because he established by a preponderance of the evidence that he acted in self-defense and while under sudden passion brought on by serious provocation from Mark.

{¶ 33} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 34} Self-defense is an affirmative defense and the defendant bears the burden of proving self-defense by a preponderance of the evidence. *State v. Gray*, 12th Dist. Butler

No. CA2010-03-064, 2011-Ohio-666, ¶ 42, citing R.C. 2901.05(A). To establish self-defense in a case where a defendant used deadly force, the defendant must prove each of the following elements: "(1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force; and (3) he did not violate any duty to retreat or avoid the danger." *Gray* at ¶ 43, citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

{¶ 35} With respect to aggravated assault, "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph five of the syllabus. "In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must [first] be applied." *State v. Shane*, 63 Ohio St.3d 630, 634 (1992). Under an objective standard, "the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. McOsker*, 12th Dist. Clermont No. CA2016-05-025, 2017-Ohio-247, ¶ 16. If the objective standard is met, "the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" *State v. Mack*, 82 Ohio St.3d 198, 201 (1998), quoting *Shane* at 635. In so doing, the trial court must consider the "emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Deem* at 211.

{¶ 36} After a thorough review of the record, we find that the jury could have reasonably concluded that Rogers failed to establish that he neither acted in self-defense nor was under serious provocation sufficient to incite or to arouse him into using deadly force.

{¶ 37} Rogers points to his testimony to support his contention that the jury clearly

lost its way in finding he failed to prove self-defense and serious provocation by a preponderance of the evidence. However, there was ample evidence presented to allow the jury to reasonably conclude Rogers failed to meet his respective burdens. With respect to self-defense, Rogers argues that he was not at fault in creating the situation that resulted in the felonious assault because he asked Mark to leave, Rogers had a legitimate belief that he was in imminent danger because Mark reached for his gun and threatened to shoot him, and Rogers did not have a reasonable opportunity to retreat from this danger. Rogers contends the same circumstances provided the jury with evidence to reasonably find serious provocation.

{¶ 38} While Rogers testified regarding the circumstances asserted above, the inclination of the greater amount of credible evidence indicates the jury did not create a manifest miscarriage of justice in finding Rogers failed to meet his respective burdens. Specifically, Mark testified he received a call in the middle of the night from his frantic ex-wife, who claimed she was in trouble and needed him to pick her up. Mark testified he drove to Rogers' home and parked outside. Rogers approached the vehicle and began punching Mark in the head. The punches continued despite Wendy interjecting herself between the fray and included Rogers attempting to pull Mark from his vehicle. Mark admitted to having a holstered handgun beneath his driver's side seat, but denied threatening Rogers with the weapon or attempting to retrieve it. Photographic evidence along with medical records and testimony indicate Mark sustained serious injuries during the altercation. While testifying on behalf of Rogers, Wendy stated she did not hear Mark threaten Rogers with a handgun and did not observe Mark attempt to retrieve a handgun.

{¶ 39} Therefore, the circumstances of what occurred during the altercation differ in several aspects based on the evidence presented by the state and the defendant. "While this court considers the credibility of witnesses in a manifest weight analysis, the [fact-finder]

- 11 -

remains in the best position to view the witnesses, observe their demeanor, and assess their credibility." *State v. Fread*, 12th Dist. Butler No. CA2013-03-045, 2013-Ohio-5206, ¶ 29. "It is well established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." (Internal quotations omitted.) *Id.*, citing *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11.

{¶ 40} The mere fact the jury believed the evidence presented by the state over Rogers' testimony does not equate to a finding the jury clearly lost its way. Furthermore, the record does not indicate inconsistency or incredibility in the testimony presented by the state to render the evidence unreliable thereby creating a manifest miscarriage of justice. Rather, the state presented evidence the jury reasonably found credible, and thus, the jury's findings regarding self-defense and serious provocation were not against the manifest weight of the evidence.

{¶ 41} Accordingly, Rogers' third assignment of error is overruled.

{¶ 42} Assignment of Error No. 4:

{¶ 43} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FINDING THAT HE COULD NOT OVERCOME THE PRESUMPTION IN FAVOR OF PRISON AT SENTENCING.

{¶ 44} Rogers contends his prison sentence is clearly and convincingly contrary to law because the trial court erred in making its findings pursuant to R.C. 2929.12 and 2929.13. Specifically, Rogers argues the trial court erred by stating it could not find Mark induced or facilitated the offense because the jury found Rogers failed to demonstrate serious provocation. Rogers argues the jury's finding against serious provocation does not necessitate the trial court's finding that Mark did not induce or facilitate the offense. Therefore, Rogers' sentence is contrary to law.

{¶ 45} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *accord State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. As explained in *Marcum*, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." (Emphasis omitted.) *Marcum* at ¶ 9. Rather, pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). Thus, "the language in R.C. 2953.08(G)(2) establishes an 'extremely deferential standard of review.'" *Crawford* at ¶ 8.

{¶ 46} A sentence is not "clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8, citing *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 6.

{¶ 47} Pursuant to R.C. 2929.13(D)(1), for a second-degree felony, a prison term is necessary to comply with the principles and purposes of felony sentencing, that is, to punish the offender and protect the public from harm. *State v. Holmes*, 9th Dist. Lorain No. 07CA009165, 2008-Ohio-1321, ¶ 16. R.C. 2929.13(D)(2) permits a trial court to depart from this presumption and impose community control sanctions in lieu of prison if it finds both that the community control sanction would adequately punish the offender and protect the public from future crime, and that the imposition of a community control sanction would not demean the seriousness of the offense. In making such findings, the trial court shall consider the

- 13 -

applicable factors set forth in R.C. 2929.12.  R.C. 2929.13(D)(2)(a)-(b).

{¶ 48}   After thoroughly reviewing the record, it is clear the trial court considered the principles and purposes of R.C. 2919.11, the recidivism factors of R.C. 2919.12, the requirements for overcoming the presumption of a prison term of R.C. 2929.13(D), properly imposed postrelease control, and sentenced Rogers within the permissible statutory range. In its consideration of R.C. 2929.12 and 2929.13(D), the trial court stated that some of the factors supported a finding against a presumption of prison.   However, the trial court determined that because the jury found against serious provocation, the trial court would not find Mark facilitated the offense pursuant to R.C. 2929.12(C)(1) or that Rogers acted under strong provocation pursuant to R.C. 2929.12(C)(2).

{¶ 49}   Contrary to Rogers' claim, the trial court did not make such determination as a matter of law, but rather, the trial court was indicating that it was not inclined to make factual findings contrary to the jury's determinations.  In other words, the trial court interpreted the evidence consistent with, and similar to, the jury's interpretations of the evidence.  The trial court was indicating its result would be no different than the result reached by the jury.

{¶ 50}   Rogers argues the trial court stated it was obligated or prevented by law from making its own findings under the statute, and therefore, his sentence is contrary to law. The record does reflect that the trial court made findings consistent with the jury's factual determinations. However, the record does not demonstrate, as Rogers asserts, that the trial court made its findings as a matter of law.  Moreover, despite the trial court's findings that some factors supported a determination against the presumption of a prison term, R.C. 2929.12 allows the trial court to consider and afford the weight given to any relevant factors in imposing a sentence.  *State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-Ohio-7908, ¶ 18.

{¶ 51}   Accordingly, the sentence imposed by the trial court is not clearly and

convincingly contrary to law and Rogers' fourth assignment of error is overruled.

**{¶ 52}** Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.