[Cite as *State v. Powih*, 2017-Ohio-7208.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


STATE OF OHIO,                          :

    Plaintiff-Appellee,                :          CASE NO.   CA2016-11-023

                                        :          O P I N I O N
- vs -                                              8/14/2017

                                        :

NEWMAN PAUL POWIH,                      :

    Defendant-Appellant.               :


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI 2016-2124


Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 510 State Street, Suite 2, Georgetown, Ohio 45121, for plaintiff-appellee

Christine D. Tailer, P.O. Box 14, Georgetown, Ohio 45121, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Newman Paul Powih, appeals from his conviction and sentence in the Brown County Court of Common Pleas for rape, gross sexual imposition, and abduction.  For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2}   On June 2, 2016, appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, one count of gross sexual imposition in

violation of R.C. 2907.05(A)(1), a felony of the fourth degree, and one count of abduction in violation of R.C. 2905.02(B), a felony of the third degree. The charges arose out of allegations that on May 21, 2016, appellant, with sexual motivation and without privilege to do so, knowingly restrained the liberty of A.H., his co-worker, so that he could sexually assault her. Specifically, appellant was accused of touching the buttocks of the victim and inserting his finger into the victim's vagina while the two were working at a nursing home in Williamsburg, Brown County, Ohio ("Brown County nursing home"). The assault occurred in a resident's room, while two elderly residents who suffer from dementia were present. The victim was employed as a state tested nurse's aide ("STNA"), and appellant had just begun his employment at the facility as a licensed practical nurse ("LPN").

{¶ 3} Appellant entered a not guilty plea to the charges. Following the exchange of discovery responses with the state, appellant filed a motion in limine to prevent the state from introducing evidence that appellant had assaulted a prior co-worker, M.B., at a nursing home located in Loveland, Warren County, Ohio ("Warren County nursing home") on May 11, 2016, ten days prior to the assault on A.H. Appellant argued the evidence should be excluded pursuant to Evid.R. 404(B) as such evidence would only be offered to show his propensity or inclination to commit crime or that he acted in conformity with bad character. Appellant further argued that the evidence should be excluded pursuant to Evid.R. 403 as the prejudicial effect of admitting M.B.'s testimony substantially outweighed the probative value of the evidence.

{¶ 4} The state filed a memorandum opposing appellant's motion in limine and a notice of its intent to use M.B.'s testimony at trial. The state asserted that M.B.'s testimony was admissible pursuant to R.C. 2945.59 and Evid.R. 404(B) as it was being offered to prove appellant's motive or intent to commit the charged crimes, to prove the absence of mistake on appellant's part, and to show appellant had a distinct common scheme or plan of targeting

female nursing aides in their mid-twenties for sexual assault once the aides were isolated in a patient's room and caring for elderly patients with "little to no awareness of what was occurring around them."

{¶ 5} Following a hearing on appellant's motion in limine, the trial court denied the motion. The court indicated it would permit M.B.'s testimony, but would "provid[e] the appropriate limiting instruction to the [j]ury at the proper time."

{¶ 6} A jury trial commenced on October 31, 2016. A.H. testified that she was 28 years old and had been working at the Brown County nursing home as an STNA for five years. She was working on May 21, 2016, which happened to be appellant's first day of employment at the nursing home. A.H. stated she was friendly with appellant upon meeting him, but denied that she flirted or engaged in a sexual conversation with appellant. A.H. observed appellant "twerking" at one point during the day, but she did not "twerk" with him or observe anyone else "twerking" with him.[1]

{¶ 7} As the day progressed, A.H. learned that appellant was very particular about how his supplies were organized. She played a joke on appellant by reorganizing his medicine cups. Shortly thereafter, A.H. was in a resident's room putting an elderly dementia patient to bed. Appellant entered the room, closed the door behind him, and informed A.H. he was going to have to "punish" her for reorganizing his cups. Appellant grabbed A.H.'s left arm, spun her around so that she was facing away from her, and then hit her four times on her buttocks. A.H. told appellant to stop, but he did not listen. Appellant pulled A.H.'s pants and underwear down before striking her bare buttocks several times. A.H. attempted to block him from hitting her bottom, and she told him to "stop" and that she was married. Appellant

---

1. "Twerking" is defined as "sexually suggestive dancing characterized by rapid, repeated hip thrusts and shaking of the buttocks especially while squatting." *Merriam-Webster's Online: Dictionary and Thesaurus*, https://www.merriam-webster.com/dictionary/twerking (accessed August 4, 2017).

"cupped" A.H.'s buttocks and inserted his finger "[up] to his second knuckle" into her vagina. A.H. was eventually able to get away from appellant. Appellant told her not to tell anybody about the incident before giving her a high five.

{¶ 8} A.H. testified that her encounter with appellant lasted about 10 to 15 minutes. During this time, she was "scared," "shocked," and "fearful." Her shock kept her from shouting for help or hitting a "call button" in the resident's room. She also explained that although the incident occurred while two residents were present in the room, neither resident was aware of what had occurred due to the fact that they suffered from dementia.

{¶ 9} After the assault ended, A.H. tried to maintain her job duties by picking up residents' dinner trays. She encountered a fellow STNA and told her about what had occurred with appellant. A.H. also told two other co-workers about the assault, and she showed them the bruises and welts that had formed on her buttocks as a result of appellant's actions. A.H.'s co-workers took pictures of A.H.'s injuries and called 9-1-1 to report the incident. A.H. spoke with Chad Noble, a detective with the Brown County Sheriff's Office, upon his arrival at the scene before going to a nearby hospital for an examination. At the hospital, A.H. was interviewed and examined by a sexual assault nurse examiner ("SANE"). The SANE nurse completed a rape kit and documented A.H.'s physical injuries.

{¶ 10} The three co-workers A.H. told about the assault all testified at trial. The co-workers testified that after the assault, A.H. was "white as a ghost, shaking, [and] crying." They observed bruises on her arm and handprints, welts, and bruises on her buttocks. One co-worker recalled A.H. stating that appellant had "raped her" by "digitally penetrat[ing] her."

{¶ 11} The SANE nurse who completed the rape kit and examined A.H. after the assault testified that she observed bruising on A.H.'s left forearm, medial thighs, and on both buttocks. The SANE nurse completed a pelvic exam and did not observe any vaginal tears or abrasions, but noted that A.H. had reported that only "about an inch" of appellant's finger

had been inserted vaginally.

{¶ 12} Detective Noble testified that after he was dispatched to the Brown County nursing home on May 21, 2016, he spoke with A.H. on the scene. He had appellant transported back to the sheriff's office, where appellant waived his *Miranda* rights and consented to an interview. This interview was filmed, and a copy of the interview was introduced into evidence.

{¶ 13} During Noble's interview with appellant, appellant admitted to entering a resident's room, closing the door, and "smack[ing] [his] co-worker's butt." Appellant first claimed that he only struck A.H.'s buttocks over her clothes. However, appellant later admitted that he pulled down A.H.'s pants and underwear and struck her bare buttocks. He also initially denied touching A.H. "around the front," but then admitted he rubbed her clitoris and "fingered her" for 5 to 10 seconds. Appellant claimed the encounter was consensual and that it all started when A.H. invited him to smack her buttocks as a punishment for reorganizing his medicine cups. Appellant claimed A.H. told him to "get it over and done with" and to "[j]ust smack it." He further claimed that as soon as A.H. told him to stop and that she was married, he stopped touching her and apologized for his actions. He told Noble that A.H. responded to his apology by stating, "Don't worry about it. You're good."

{¶ 14} Over defense counsel's objection, and after the trial court provided the jury with a limiting instruction, M.B. was permitted to testify about her interaction with appellant on May 11, 2016, at the Warren County nursing home. M.B. testified that on May 11, 2016, she was a 27-year-old STNA working at the same nursing home that employed appellant. On this day, M.B. was in a resident's room helping an elderly resident climb back into bed after using the restroom. M.B. testified appellant entered the resident's room, came up behind her, lifted the back of her shirt, and stated he wanted to see her tattoo. M.B. got the resident into bed and then tried to get away from appellant by exiting the room. However, appellant

rushed over to the room's door, closed it, and put his foot in front of it to prevent M.B. from leaving. Appellant then shoved his hands down the back of M.B.'s pants and told her that she had a nice backside and that he liked her underwear. He grabbed her breast and told her to "[b]e a good sub." M.B. told appellant to stop and to let her go. Before letting M.B. free, appellant asked M.B. if she was "one of those ones to tell." After she said, "no," he opened the door and M.B. ran out of the room. M.B. immediately left the nursing home, but reported the incident to the Loveland Police Department.

{¶ 15} Following M.B.'s testimony, the state rested its case. Appellant moved for acquittal pursuant to Crim.R. 29, but his motion was denied by the trial court. Thereafter, appellant rested his defense without calling any witnesses, the trial court provided final jury instructions, which included a limiting instruction regarding the other acts evidence, and the matter was submitted to the jury.

{¶ 16} The jury found appellant guilty of all charges. A sentencing hearing was held on November 15, 2016. At this time, the trial court merged appellant's conviction for gross sexual imposition into his rape conviction. Appellant was classified as a Tier II sex offender and was sentenced to a five-year prison term for his rape conviction and a 12-month prison term for his abduction conviction. The prison terms were ordered to be served consecutively to one another, for an aggregate prison term of six years.

{¶ 17} Appellant timely appealed his conviction and sentence, raising two assignments of error.

{¶ 18} Assignment of Error No. 1:

{¶ 19} IT WAS ERROR FOR THE TRIAL COURT TO OVERRULE APPELLANT'S MOTION IN LIMINE AND ALLOW THE STATE TO INTRODUCE EVIDENCE OF A PRIOR BAD ACT IN CONTRAVENTION OF EVIDENCE RULES 403 AND 404(B).

{¶ 20} In his first assignment of error, appellant argues the trial court erred when it

denied his motion in limine and allowed M.B. to testify at trial about the events that occurred at the Warren County nursing home on May 11, 2016. Appellant contends the events associated with M.B. were not "inextricably related" to the charges he faced and were therefore inadmissible pursuant to Evid.R. 404(B). He further argues that even if M.B.'s testimony was admissible pursuant to Evid.R. 404(B), the evidence should have been excluded under Evid.R. 403 as the probative value of M.B.'s testimony was "clearly outweighed by the risk of unfair prejudice."

{¶ 21} As an initial matter, we note that a trial court's ruling on a motion in limine is a "tentative, interlocutory, and precautionary ruling that reflects the trial court's anticipated treatment of an evidentiary issue that may arise at trial." *State v. Shalash*, 12th Dist. Warren No. CA2014-12-146, 2015-Ohio-3836, ¶ 30. A trial court's ruling on a motion in limine does not preserve the record on appeal; rather, "any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or ruling on the record." *State v. Hensley*, 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 29. In the present case, appellant objected to M.B.'s testimony at trial, thereby preserving the issue for appeal.

{¶ 22} "A trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. An abuse-of-discretion standard of review is a deferential review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 23} "Evidence that an accused committed a crime other than the one for which he

is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. However, there are certain exceptions to the general rule regarding the admission of evidence of other acts of wrongdoing. R.C. 2945.59, for instance, provides that

> [i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Additionally, Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In order for evidence to be admissible pursuant to Evid.R. 404(B), there must be substantial proof the alleged other acts were committed by the defendant and the evidence must tend to prove one of the enumerated exceptions. *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994).

**{¶ 24}** In *Williams*, the Ohio Supreme Court was asked to determine whether evidence that the defendant had a prior sexual relationship with an underage boy, A.B., he coached in the 1990s was properly admitted pursuant to Evid.R. 404(B) in the state's prosecution of the defendant for sex offenses committed in 2008 against a different underage boy, J.H., that the defendant was mentoring. *Williams*, 2012-Ohio-5695 at ¶ 3-5. The supreme court recognized that "[e]vidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B) – to show proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* at ¶ 19. The court set forth a three-step analysis that courts should conduct in determining the admissibility of other acts evidence. *Id.* First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶ 25} Applying this three-part test, the supreme court determined that the other acts evidence related to the defendant's conduct and relationship with A.B. was properly admitted in accordance with Evid.R. 404(B) as it helped to prove motive, preparation, and plan on the part of the defendant. *Id.* at ¶ 24-25. With respect to the first step of the court's three-part test, the court found that A.B.'s testimony was relevant "because it tended to show the motive [the defendant] had and the preparation and plan he exhibited of targeting, mentoring, grooming, and abusing teenage boys." *Id.* at ¶ 22. Further, A.B.'s testimony "rebutted the suggestion offered by the defense during opening statements that J.H. had falsely accused [the defendant] of abuse with the hope of getting out of trouble at school and the suggestion that [the defendant] was sexually attracted to women." *Id.* As for the second-part of the test, the court noted that the evidence of the defendant's relationship with A.B. was not offered to show that abusing J.H. was in conformity with the defendant's character. *Id.* at ¶ 23. "In fact, the trial court gave two limiting instructions that this evidence was *not* being offered to prove [the defendant's] character – one just prior to the testimony of A.B. and one prior to

deliberation." *Id.* Finally, with respect to the third part of the test, the court found that the evidence was not unduly prejudicial given the limiting instructions provided to the jury. *Id.* at ¶ 24. "[T]he trial court instructed the jury that this evidence could not be considered to show that [the defendant] had acted in conformity with a character trait. This instruction lessened the prejudicial effect of A.B.'s testimony, and A.B. corroborated J.H.'s testimony about the sexual abuse, which had been denied by [the defendant]." *Id.*

{¶ 26} The present case is similar to *Williams* and, after applying the three-part test set forth above, we conclude that the trial court did not abuse its discretion in permitting the other acts evidence. M.B.'s testimony was relevant as it tended to show appellant's motive, intent, and plan of targeting and sexually assaulting female nursing aides in their mid-twenties who were isolated in a resident's room while caring for elderly patients who lacked awareness of what was occurring around them. M.B.'s testimony was also relevant to prove the absence of mistake and to rebut the suggestion offered by the defense during opening statements that A.H. consented to sexual contact with appellant before falsely accusing appellant of assaulting her because she did not want to accept responsibility for her actions.

{¶ 27} Contrary to appellant's assertions, M.B.'s testimony was not offered to show that abducting and sexually assaulting A.H. was in conformity with appellant's character. The trial court gave two limiting instructions regarding M.B.'s testimony. Just prior to M.B. testifying, the court advised the jury as follows:

> THE COURT: Ladies and gentlemen, you're about to hear evidence concerning a separate alleged incident, in May 2016, involving Mr. Powih. This evidence is only being offered and may only be considered by you in determining whether Mr. Powih had a common scheme, a plan, or a system in engaging in the conduct alleged in determining Mr. Powih's preparation, motive, intent, or absence of mistake or accident, in engaging in the alleged misconduct, with the alleged victim, in this present case.
>
> You may not – again, you may not consider this evidence as proof of Mr. Powih's character, in order to show that he acted in

conformity with that character.

Then, prior to the jury's deliberation, the court provided a second limiting instruction to the jury regarding the other acts evidence. We must presume the jury followed the court's instructions and did not consider M.B.'s testimony to show that appellant was acting in conformity with bad character. *See Williams*, 2012-Ohio-5695 at ¶ 23; *State v. Stevens*, 12th Dist. Butler No. CA2015-09-020, 2017-Ohio-498, ¶ 32; *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 36.

**{¶ 28}** Finally, in light of the trial court's limiting instructions, we conclude that the probative value of M.B.'s testimony was not substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403. M.B.'s testimony was properly admitted as other acts evidence to prove appellant's motive, intent, and plan, and to show the absence of mistake. Providing a limiting instruction to the jury both before M.B. testified and before the case was submitted to the jury minimized any potential prejudice. *See Williams* at ¶ 24; *Ward* at ¶ 37; *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-368, ¶ 19.

**{¶ 29}** We therefore conclude that the trial court did not err in denying appellant's motion in limine and allowing M.B. to testify at trial about appellant's actions on May 11, 2016. In reaching this determination, we find appellant's argument that the other acts evidence had to be "inextricably related" by being "part of the immediate background of the alleged act which forms the foundation of the crime charged," to be without merit. The Ohio Supreme Court expressly rejected this argument in *Williams*, stating, "[p]ursuant to Evid.R. 404(B), * * * evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, *even if* the identity of the accused or *the immediate background of a crime is not at issue.*" (Emphasis added.) *Williams*, 2012-Ohio-5695 at ¶ 2. *See also Ward*, 2014-Ohio-990 at ¶ 39.

**{¶ 30}** Appellant's arguments are, therefore, without merit and his first assignment of

error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} IT WAS PLAIN ERROR, AND AS SUCH THE TRIAL COURT ERRED AS A MATTER OF LAW, IN NOT MERGING TOGETHER THE OFFENSES OF RAPE AND [A]BDUCTION.

{¶ 33} In his second assignment of error, appellant argues the trial court erred when it failed to merge his convictions for abduction and rape as allied offenses of similar import. Appellant concedes that a plain-error standard of review applies to his claim as he failed to raise the issue of whether the two offenses were allied at his sentencing hearing.[2]

{¶ 34} The "failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. The imposition of multiple sentences for allied offenses of similar import constitutes plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 35} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

---

2. At appellant's sentencing hearing, defense counsel argued appellant's convictions for rape and gross sexual imposition merged as allied offenses of similar import. Defense counsel did not, however, argue that appellant's abduction offense merged with either the rape offense or the gross sexual imposition offense.

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 36} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three separate factors – the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if *any* of the following are true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus and ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 37} Application of the allied offense test "'may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct – an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 52.

{¶ 38} At the sentencing hearing, the trial court considered the issue of merger and found that the rape and abduction offenses did not merge as the offenses were of dissimilar import. Specifically, the trial court stated:

The Court does believe, in doing the evaluation, under *State v. Ruff*, that the Count 1 [rape] and 3 [abduction] are of dissimilar import in that there were harms that resulted – that were separate and identifiable. One, being physical harm, which is actually an element of Count 3, as well as the emotional harm that was

occasioned upon this victim, as a result of the sexual penetration that was occasioned by Count 1.

In finding that the offenses were not allied, the trial court relied on *State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977.

{¶ 39} In *Tajblik*, a defendant prevented his roommate-victim from gaining access to her cell phone or from leaving the home they shared for more than an hour. *Id.* at ¶ 5. The defendant later sexually assaulted the victim by forcing her to perform oral sex and by inserting an object into her vagina. *Id.* at ¶ 6. The defendant was convicted of two counts of rape and one count of abduction, and the trial imposed separate sentences on each offense. *Id.* at ¶ 2. The Sixth District Court of Appeals upheld the sentence, concluding that the defendant's convictions for rape and abduction did not merge as the offenses "occurred separately" and "[e]ach offense carried a separate risk of physical and emotional harm." *Id.* at ¶ 29. The court noted that there had been "separate instances of abduction when [the defendant] refused to let the victim leave the bedroom and stood in the doorway blocking her way out when she used the bathroom at one point." *Id.* Further, the court found that there was evidence of separate harm as "[t]he victim testified as to the emotional trauma she experienced from knowing she could not get away, and in one instance could not get up from the floor, which was clearly separate from the emotional and physical harm she experienced from the acts of rape." *Id.*

{¶ 40} The present case is distinguishable from *Tajblik*. Unlike in *Tajblik*, appellant's restraint of A.H. in the resident's room, an element of his abduction conviction, was part of a single course of conduct that included rape and gross sexual imposition.[3] A.H. testified that

---

3. Appellant was indicted on abduction on the basis that he, "*with sexual motivation* and without a privilege to do so, knowingly, by force or threat, restrain[ed] the liberty of [A.H.] under circumstances that created a risk of physical harm to her or placed her in fear." (Emphasis added.) Although appellant raises only the issue of whether his abduction offense merges with his rape conviction, it is necessary to consider appellant's animus and conduct as it pertained to both sex offenses (the rape and gross sexual imposition).

appellant entered the room where she was assisting a resident, locked the door, grabbed her arm, spun her around, spanked her clothed buttocks, yanked her pants and underwear down before spanking her bare buttocks, and inserted his fingers into her vagina. Appellant's restraint of A.H. in the resident's room was incidental to the commission of the sex offenses. The restraint and sexual acts were undifferentiated by time, place, or circumstances. *See State v. Patel*, 2d Dist. Greene No. 2010-CA-77, 2011-Ohio-6329, ¶ 88 (finding the offenses of abduction, rape, and gross sexual imposition allied offenses of similar import where the defendant entered a bathroom, locked the door, and proceeded to place a hand down the victim's pants and a finger inside the victim's vagina); *State v. Hernandez*, 12th Dist. Warren No. CA2010-10-098, 2011-Ohio-3765, ¶ 53 (finding that abduction and rape were allied offenses where the defendant's restraint of the victim was "incidental to the underlying sexual crimes, and had no significance independent of those sexual crimes").

{¶ 41} Additionally, the record reveals that appellant acted with the same animus when he committed the abduction and sex offenses. Appellant committed the abduction with sexual motivation. He restrained A.H.'s liberty to facilitate his purpose of digitally raping A.H. and touching A.H.'s buttocks.

{¶ 42} Further, the abduction and sexual offenses were of similar import. Unlike in *Tajblik*, the harm that resulted from the abduction offense was not separate and identifiable from the harm that resulted from the rape and gross sexual imposition offenses. A.H. did not testify about separate harm or trauma that she experienced as a result of being restrained by appellant. A.H. experienced the same type of physical and psychological harm from the commission of the abduction offense as she did the sex offenses – she suffered bruising and contusions and was "shocked," "scared," and "fearful."

{¶ 43} Accordingly, under the specific facts of this case, we conclude that the trial court erred in failing to merge appellant's convictions for rape and abduction as allied

offenses as the offenses were committed with the same animus, were not committed separately, and were similar in import. We therefore sustain appellant's second assignment of error. The judgment of the trial court is reversed and the matter is remanded for resentencing. Upon remand, the state can elect which allied offense to pursue, and the trial court must accept the state's choice and merge the crimes into a single conviction for sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 20, 24; *State v. Ozevin*, 12th Dist. Clermont No. CA2012-06-044, 2013-Ohio-1386, ¶ 16.

{¶ 44} Judgment affirmed in part, reversed in part, and the cause remanded for resentencing consistent with this opinion.

S. POWELL and M. POWELL, JJ., concur.