[Cite as *State v. Duncan*, 2020-Ohio-3916.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-19-75

    v.

KARL F. DUNCAN,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2019 0086

**Judgment Affirmed**

Date of Decision: August 3, 2020

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *Jana E. Emerick* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Karl F. Duncan ("Duncan") appeals the judgment of the Allen County Court of Common Pleas, alleging that the trial court erred by (1) permitting a lay witness to give opinion testimony and (2) permitting the alleged victim to give other acts testimony. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} At roughly 3:30 A.M. on February 24, 2019, the Allen County Sheriff's Department received a call from a Speedway Station in which an incident of domestic violence was reported. Tr. 307. The officers who responded to this call encountered Duncan's girlfriend, A.R., when they arrived at the Speedway Station. Tr. 167, 206-207, 288. A.R. informed the officers that Duncan had been drinking and that they had gotten into an argument. Tr. 180, 189, 289. She indicated to the officers that Duncan began to get physical with her and that he eventually threatened her with a knife. Tr. 190-197, 289-290.

{¶3} A.R. reported that she separated herself from Duncan by leaving their camper. Tr. 289-290, 294. She later testified that she ran from their camper to the Speedway Station after Duncan fell asleep. Tr. 203, 206. After A.R. filled out an incident report, the officers took several pictures of A.R.'s injuries in the bathroom of the Speedway Station. Tr. 290-291. These photographs were later admitted as

evidence at trial. Tr. 354. Ex. 3, 4. The officers then went to the camper, made contact with Duncan, and then placed him under arrest. Tr. 299-301.

{¶4} Detective Donavin Geiger ("Detective Geiger") of the Allen County Sheriff's Office was assigned to investigate this case. Tr. 328-329. He met with A.R. on February 25, 2019. Tr. 331. At this meeting, several pictures of A.R.'s injuries were taken. Tr. 331-332. These pictures were later admitted as evidence at trial. Tr. 351. Ex. 12- 17. On April 11, 2019, Duncan was indicted on one count of domestic violence in violation of R.C. 2919.25(A), 2919.25(D)(3); one count of felonious assault in violation of 2903.11(A)(2), 2903.11(D)(1)(a); and one count of kidnapping in violation of R.C. 2905.01(A)(2), 2905.01(C)(1). Doc. 4.

{¶5} The jury trial on these charges was held on September 3 and 4, 2019. Tr. 1, 283. On September 5, 2019, the jury found Duncan not guilty of the charge of felonious assault. Doc. 60. The jury found Duncan guilty of the charge of domestic violence and found that he had a prior conviction for the offense of domestic violence. Doc. 61. The trial court declared a mistrial as to the charge of kidnapping, having determined that the jury could not reach a unanimous verdict on his matter.[1] Doc. 62. The trial court entered a judgment entry of sentencing on November 7, 2019. Doc. 65.

---

[1] The State elected not to proceed to a retrial on this third count against Duncan. Sentencing Tr. 1. The trial court then dismissed this charge. Tr. 1.

{**¶6**} The appellant filed his notice of appeal on December 5, 2019. Doc. 69.

On appeal, Duncan raises the following assignments of error:

**First Assignment of Error**

**The trial court erred when it permitted Detective Geiger to provide improper opinion testimony, and offer conclusions regarding the progression of a bruise.**

**Second Assignment of Error**

**The trial court erred to the prejudice of the defendant's substantial rights by admitting unduly prejudicial testimony about prior bad acts, the only probative value of which was to establish the defendant's bad character and conduct in conformity therewith, the admission of this testimony violated the appellant's right to due process under the Fourteenth Amendment.**

*First Assignment of Error*

{**¶7**} Duncan argues that the trial court erred by allowing Detective Geiger, a lay witness, to give what he alleges to be improper opinion testimony.

Legal Standard

{**¶8**} Different rules govern the admissibility of opinion testimony from expert witnesses and lay witnesses. *See* Evid.R. 701, 702. Evid.R. 701 governs the admissibility of opinion testimony from lay witnesses and reads as follows:

**If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.**

Evid.R. 701. "The distinction between lay and expert witness opinion testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737, fn. 2 (2001), quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992).

{¶9} "The line between expert testimony under Evid.R. 702 and lay opinion testimony under Evid.R. 701 is not always easy to draw." (Citations omitted.) *State v. Salyers*, 3d Dist. Allen No. 1-19-17, 2020-Ohio-147, ¶ 30, quoting *State v. Ndao*, 2d Dist. Montgomery No. 27368, 2017-Ohio-8422, ¶ 25. The Supreme Court of Ohio has recognized that "courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *McKee, supra*, at 296.

> **Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience.**

*McKee, supra*, at 297. (Footnote omitted.) *See Salyers* at ¶ 30. Thus, courts across Ohio have allowed police officers, as lay witnesses, to offer opinions if such testimony meets the requirements of Evid.R. 701. *See State v. Evans*, 1st Dist. Hamilton No. C-170034, 2018-Ohio-2534, ¶ 32; *State v. Renner*, 2d Dist.

Montgomery No. 25514, 2013-Ohio-5463, ¶ 77; *State v. Thacker*, 4th Dist. Lawrence No. 04CA18, 2005-Ohio-1227, ¶ 18; *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 75.

{¶10} "However, the erroneous admission of lay opinion testimony 'does not give rise to grounds for reversal where the opinion testimony was not [unfairly] prejudicial to the defendant or where the opinion testimony did not [unfairly] bias the jury against the defendant.'" (Bracketed insertions sic.) *State v. Keith*, 3d Dist. Allen Nos. 1-06-46, 1-06-53, 2007-Ohio-4632, ¶ 44, quoting *State v. Qualls*, 3d Dist. No. 9-01-07, 2001 WL 1261240, *4 (Oct. 22, 2001). *See State v. Cooper*, 8th Dist. No. 86437, 2006-Ohio-817, ¶ 19; *State v. Russell*, 12th Dist. Butler No. CA2012-08-156, 2013-Ohio-3079, ¶ 37.

{¶11} The admissibility of relevant evidence lies within the sound discretion of the trial court. *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 8 (3d Dist.). An appellate court reviews a trial court's determination on the admission of evidence under an abuse of discretion standard. *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 20 (3d Dist.). Thus, an appellate court is not to substitute its judgment for that of the trial court but will reverse the trial court's decision if it is unreasonable, arbitrary, or capricious. *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 23.

Case No. 1-19-75

Legal Analysis

{¶12} Duncan identifies the following exchange between the prosecutor and

Detective Geiger as the basis of his first assignment of error:

> **[Prosecutor]:  And in your experience with the Sheriff's Office, have you responded to a number of assaults or domestic violences?**
>
> **[Detective Geiger]:  I have.**
>
> **[Prosecutor]:  Involving injuries?**
>
> **[Detective Geiger]:  Yes.**
>
> **[Prosecutor]:  Okay.  And are you familiar with the progression of a bruise?**
>
> **[Detective Geiger]:  I am.**
>
> **[Prosecutor]:  Okay.  And could you just—**
>
> **[Defense Counsel]:  Your Honor, objection.  He is not a medical expert and we are going a little bit beyond lay opinion.  Thank you.**
>
> **[Prosecutor]:  Your Honor, he testified as to he had experience with numerous calls involving injuries of the sort.  This isn't necessarily expert testimony, but due to his experience as a police officer responding to such calls he should be able to testify about this.**
>
> **[The Court]:  I am going to agree with the prosecution at this point, but keep it limited.**
>
> **[Prosecutor]:  Thank you, your Honor.**
>
> **[Prosecutor]:  Uhm, is it typical, in your experience, is it typical for a bruise to appear immediately after injury?**

> **[Detective Geiger]:** No, uhm, from what I have noticed throughout my years of responding to these type of calls, typically it will look red first and then the actual, I guess, what I would consider the bruising—the blue and black and green colors, they should usually come sometime after.
>
> **[Prosecutor]:** Okay, when you say sometime, maybe a couple of days in your experience?
>
> **[Detective Geiger]:** Yes it could be.

Tr. 338-340. Duncan argues that Detective Geiger, as a lay witness, gave an opinion regarding the progression of bruising in the absence of "specialized knowledge, skill, experience, or training" in this area. Appellant's Brief, 9. However, in this case, we do not ultimately need to decide whether the trial court erred in allowing Detective Geiger to offer this opinion because, even if this testimony had been erroneously admitted, this would constitute harmless error.

{¶13} At trial, pictures of A.R.'s injuries were introduced as evidence. Ex. 3-4, 12-16. Some of these pictures were taken at the Speedway Station on February 24, 2019 ("February 24 Pictures"), and some of these pictures were taken when A.R. met with Detective Geiger on February 25, 2019 ("February 25 Pictures"). Ex. 3-4, 12-16. These pictures were introduced to establish the nature and extent of A.R.'s injuries. Tr. 332-334. A.R.'s injuries in the February 24 Pictures appeared as areas of redness, but her injuries appeared as black and blue areas in the February 25 Pictures. Ex. 3-4, 12-16. In this context, Detective Geiger's opinion, as to the

progression of bruising, was sought to explain why the same injuries could appear differently in the two sets of pictures.

{¶14} However, at trial, A.R. testified that the police took pictures at the Speedway Station and identified her injuries in the resulting February 24 Pictures. Tr. 206-207, 210. Ex. 3-4. A.R. then testified that police took more pictures of her injuries at the interview with Detective Geiger on February 25, 2019. Tr. 230. Ex. 12-16. A.R. identified her injuries in the February 25 Pictures. Tr. 231-234. She stated that the "bruising * * * was more visible" at that time of the February 25 Pictures were taken. Tr. 231. She also expressly connected the injuries in the February 24 Pictures and in the February 25 Pictures to Duncan's actions. Tr. 208-209, 230-236. We also note that Duncan did not raise an objection to A.R.'s testimony regarding her bruises or her testimony regarding the pictures of her injuries. Tr. 208-209, 230-236. *See State v. Blair*, 2016-Ohio-2872, 63 N.E.3d 798, ¶ 95 (4th Dist.).

{¶15} In her trial testimony, A.R. gave far more detailed descriptions of her injuries and expressly connected her injuries, as depicted in both sets of pictures, to Duncan's actions. Tr. 208-209, 230-236. Given the content of A.R.'s testimony, Duncan has not demonstrated how the admission of Detective Geiger's opinion testimony unfairly prejudiced him or affected his substantial rights. While we need not and do not reach a conclusion as to whether the trial court erred in permitting this opinion evidence, we do find that, even if this testimony was improperly

admitted, this error was harmless. *See* Crim.R. 52(A). Thus, Duncan's first assignment of error is overruled.

*Second Assignment of Error*

{¶16} Duncan alleges that the trial court erred in permitting the victim, A.R., to give other acts testimony that was unfairly prejudicial.

Legal Standard

{¶17} In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). "Evid.R. 404(B) applies to the admission of 'other acts' extrinsic to the charged offense and not those acts intrinsic to the offense * * *." *State v. Lester*, 3d Dist. Union Nos. 14-18-21, 14-18-22, 2020-Ohio-2988, ¶ 43. This general rule "is intended to preclude a prejudicial attack on a defendant's character." *State v. Smith*, 49 Ohio St.3d 137, 140, 551 N.E.2d 190, 193 (1990).

{¶18} However, evidence of other acts "may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). The Ohio Supreme Court has set forth the following three step analysis for applying the exception contained in Evid.R. 404(B):

> **The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider**

**whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.**

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

The admission of other acts evidence under Evid.R. 404(B) lies within the discretion

of the trial court. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d

565, ¶ 66. Thus, an appellate court will not reverse such a decision "in the absence

of an abuse of discretion that has created material prejudice." *Id.*

Legal Analysis

{¶19} Duncan identifies the following exchange between the prosecutor and

A.R. as the basis of his second assignment of error:

> **[Prosecutor]: Okay. Once he had finished kicking you what happened next?**
>
> **[A.R.]: We sat there for a few minutes and I tried to ask to go to the bathroom and after I asked to go to the bathroom he said that I couldn't leave. He walked over to the kitchenette, he pulled a knife out of the drawer. He walked over to me and held it to my eye and told me that I wasn't going to leave him like that again, that he would f\*\*\*ing kill me.**
>
> **[Prosecutor]: Okay. And you said that in response to you asking to go to the bathroom is when he went and got this knife out of the drawer?**
>
> **[A.R.]: Yes, because he—any time that we have had any fights or disputes there is only one way out—**

**[Defense Counsel]:  Objection, prior bad acts.**

**[Prosecutor]:   She said disputes, your Honor, so, I mean, she didn't say anything about him committing any crimes.**

**[The Court]:   Given her wording I am going to overrule the objection at this time.**

**[Prosecutor]:  Okay.  * * * You said that any time you had any prior disputes or altercations, continue with what you were going to say about the bathroom.**

**[A.R.]:  Uhm, like I said, when I tried to ask to go to the bathroom he had pulled it out, held it up to my eye, told me he would f***ing kill me and I was very scared for my life.**

**[Prosecutor]:  Okay.  You had started to talk about there was only one way out of the camper and that had something to do with you asking to go to the bathroom.  You started to discuss that, can you elaborate a little further on that?**

**[A.R.]: Well any time that we have had any arguments and he has kept me there without letting me leave—**

**[Defense Counsel]:  Objection, same grounds.  Now we are talking about something that would constitute a bad act.**

**[The Court]:  Approach please.**

**(Whereupon there was an off record discussion at the bench)**

**[The Court]:  Go ahead.**

**[Prosecutor]:  Thank you, your Honor.**

**[Prosecutor]:  * * * I will cut right to the chase.  Prior times that you and Karl had arguments or disputes and you just wanted to get out of there, had you said I am going to use the restroom and then leave?  Is that kind of what you are saying?**

**[A.R.]: Yes.**

> **[Prosecutor]: Okay. And so when you asked to use the restroom after he was kicking you in the shin that is when you said he got the knife and said you are not leaving me like that again?**

> **[A.R.]: Right.**

Tr. 195-197. Duncan argues that A.R.'s testimony of these other actions was offered to show his conformity with this prior behavior. We turn now to examining the content of this exchange under the Ohio Supreme Court's three-step test.

**{¶20}** First, A.R.'s testimony regarding Duncan's prior actions was relevant evidence. A.R. indicated that, in previous arguments, she would tell Duncan that she needed to use the restroom as an excuse to leave. Tr. 197. This prior history explains why Duncan responded to her statement about using the restroom by pulling out a knife and telling her that she "wasn't going to leave him like that *again*, that he would f\*\*\*ing kill me." (Emphasis added.) Tr. 195-196. From A.R.'s testimony, Duncan appears to have interpreted her statement about going to the restroom as an attempt, on her part, to leave. Tr. 195-197.

**{¶21}** Further, in this case, Duncan had been charged with kidnapping. Doc. 4. A.R.'s testimony indicates that she intended to leave. Tr. 196. Her testimony regarding their prior interactions suggests that Duncan understood that she was attempting to leave and that he may have threatened her with a knife as a means to "restrain her liberty." R.C. 2905.01(A)(2). This prior history also sheds light on

how A.R. would have interpreted Duncan's actions and whether she would have understood herself as free to leave at that time.

**{¶22}** Second, A.R.'s challenged statements were offered for permissible purposes under Evid.R. 404(B). This prior history was used to establish Duncan's motive in pulling out the knife. A.R.'s testimony suggests that he understood she was trying to leave and pulled out the knife to prevent her from leaving as she had during previous arguments. This prior history is also probative of A.R.'s intent at the time of this altercation. This statement indicates that she intended to leave when she stated she was going to the restroom. Further, this prior history is also probative as to how she understood his statements; why she chose to stay until Duncan fell asleep; and whether she felt free to leave at that time. Demonstrating motive and intent were permissible purposes for using this evidence. Evid.R. 404(B).

**{¶23}** Third, the probative value of this evidence was not substantially outweighed by the potential for unfair prejudice. A.R.'s testimony in this exchange was limited to what was required to understand her statement about going to the restroom on the night of the alleged offense. Tr. 195-197. Her testimony primarily concerned her own previous practices. Beyond this, A.R. did not mention any other unnecessary details about Duncan or any prior arguments that they may have had. Tr. 195-197. Further, as we have already noted, this evidence was probative of A.R.'s mental state and Duncan's motive at this time.

**{¶24}** In this case, the trial judge also gave the jurors a limiting instruction as to how they were to view this portion of A.R.'s testimony. The trial judge stated:

> **Evidence was received involving other incidences [sic] involving the defendant drinking and/or not allowing a witness to leave. This evidence is evidence of the commission of wrongs other than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. To describe the mental status of the alleged victim and her actions and to explain some of the defendants alleged comments during the events at issue in these charges. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with that character. You may consider that evidence only for the purpose with which it was given. The evidence cannot be considered for any other purpose.**

Tr. 505. *See State v. Powih*, 2017-Ohio-7208, 97 N.E.3d 1, ¶ 28 (12th Dist.). We are to "presume that the jurors followed the trial court's instructions." *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 21.

**{¶25}** After reviewing the evidence in the record, we conclude that the challenged testimony from A.R. was relevant, was provided for a permitted purpose, and had a probative value that outweighed the potential danger of unfair prejudice. The admission of this evidence was consistent with Evid.R. 404(B). We do not find any indication that the trial court abused its discretion in permitting this testimony at trial. Thus, Duncan's second assignment of error is overruled.

*Conclusion*

**{¶26}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**PRESTON and ZIMMERMAN, J.J., concur.**

**/hls**