[Cite as *State v. Laghaoui*, 2018-Ohio-2261.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-06-098 |
| | : | O P I N I O N |
| - vs - | | 6/11/2018 |
| | : | |
| MOHAMMED LAGHAOUI, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16CR032065

David P. Fornshell, Warren County Prosecutor, Kirsten A. Brandt, 520 Justice Drive, Lebanon, OH 45036, for plaintiff-appellee

Stephan D. Madden, 810 Sycamore Street, Sixth Floor, Cincinnati, OH 45202, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Mohammed Laghaoui ("Laghaoui"), appeals from his conviction in the Warren County Court of Common Pleas after a jury found him guilty of a variety of felony offenses, including attempted aggravated murder of a law enforcement officer, which resulted in him being sentenced to an aggregate 36-year prison term. For the reasons outlined below, we affirm.

{¶ 2} On July 5, 2016, the Warren County Grand Jury returned a multi-count indictment charging Laghaoui with attempted aggravated murder of a law enforcement officer, felonious assault, improperly discharging a firearm into a habitation, tampering with evidence, and domestic violence, among others. The charges arose after Laghaoui used a Century Arms RAS-47 (a civilian variant of an AK-47) to shoot Deputy Katie Barnes of the Warren County Sheriff's Office, his father, Abdessadek Laghaoui, and shot at his neighbor, Jason Ratliff, after he and his brother, Lhoucine Laghaoui, got into an argument about cleaning the dishes.[1] Laghaoui, who is originally from Morocco, was then just 19 years old.

{¶ 3} On July 6, 2016, Laghaoui appeared for his arraignment and entered a plea of not guilty. After Laghaoui entered his not guilty plea, the trial court set bond at $2,000,000 and appointed Laghaoui an attorney. The following week, on July 13, 2016, Laghaoui requested the trial court order a competency evaluation to determine whether he was competent to stand trial. The trial court granted Laghaoui's motion and scheduled a hearing on the matter for September 14, 2016.

{¶ 4} On August 12, 2016, attorney Nadeem Quraishi ("Attorney Quraishi") filed a notice of substitution of counsel for Laghaoui, thereby becoming Laghaoui's counsel of record. It is undisputed that Attorney Quraishi was hired by Laghaoui's father, Abdessadek. As noted above, Laghaoui's father was one of the victims Laghaoui was charged with shooting in this case.

{¶ 5} On September 14, 2016, the trial court held the previously scheduled hearing on Laghaoui's competency to stand trial. At this hearing, the trial court heard testimony from a single witness, Dr. Jennifer O'Donnell, a psychologist with Forensic Evaluation

---

1. The underlying facts in this case are generally immaterial to the issues raised by Laghaoui on appeal. For a more detailed understanding of the facts giving rise to the charged offenses, *see* https://www.wcpo.com/news/local-news/warren-county/mohammed-laghaoui-found-guilty-of-most-serious-counts-in-june-shooting-of-father-and-deputy (accessed May 24, 2018).

Service Center, Inc., who testified that Laghaoui was not competent to stand trial based on her "strong sense, clinical sense" that "there was something going on" with Laghaoui given his guardedness and his general unwillingness to engage in a conversation with her while he was being held in the Warren County Jail regarding the charges against him, the basis for those charges, and any possible defense(s) he may have had. As Dr. O'Donnell testified, "I tried to let the Court know I have a sense that there's something going on here." This opinion, as Dr. O'Donnell testified, was based on the limited information then available to her, which came mostly from her discussion with Laghaoui's parents.

{¶ 6} Despite Dr. O'Donnell's testimony, the trial court found Laghaoui was competent to stand trial. In so holding, the trial court found Dr. O'Donnell's testimony "clearly established" that Laghaoui understood the "nature of the proceedings and the objective of these proceedings." The trial court found the same to be true regarding whether Laghaoui could assist in his defense. As the trial court stated, "I do find that Dr. O'Donnell limited her opinion to a sense or a feeling based upon her meeting with [Laghaoui] and that that sense or feeling is not going to rise * * * to a preponderance of the evidence, and that that presumption [that Laghaoui was competent to stand trial] is not overcome."

{¶ 7} On October 21, 2016, Laghaoui filed a notice with the trial court joining his not guilty plea with a plea of not guilty by reason of insanity, which was based primarily on his admitted prior use of synthetic cannabinoids. Several months later, on March 10, 2017, the state filed a motion in limine requesting the trial court exclude testimony from Laghaoui's intended expert witness, Dr. William Fantegrossi, "concerning any alleged psychiatric or psychological conditions of the defendant that are related to his voluntary ingestion of drugs;" specifically, the synthetic cannabinoids XLR-11 and AB-CHMINACA.

{¶ 8} After holding a hearing on the matter, the trial court granted the state's motion in limine. In reaching this decision, the trial court noted Dr. Fantegrossi's testimony that the

- 3 -

relationship between synthetic cannabinoids and their potential to induce psychosis had not yet been subject to peer review and "is not generally accepted in the scientific community, due to its relatively new emergence as a field of study." The trial court further noted:

> Ultimately, Dr. Fantegrossi stated that it cannot be determined to a reasonable degree of scientific certainty that synthetic cannabinoids, such as the ones ingested by [Laghaoui], induce psychosis, just that there is a relationship and that he "would not be surprised" if the drugs induced psychosis.

Concluding, the trial court stated:

> The Court finds that while Dr. Fantegrossi certainly spoke competently and thoroughly about his field of study and the emerging research that has been completed, this theory remains largely unsubstantiated as yet. For this reason, the Court finds that this testimony cannot pass *Daubert's* reliability standard. As a result, the Court finds this testimony is therefore rendered inadmissible under Evid. R. 702.

{¶ 9} After granting the state's motion in limine, the matter proceeded to an eight-day jury trial. At trial, the jury heard testimony from several witnesses, including Deputy Barnes, Laghaoui's father, Abdessadek, and Laghaoui's brother, Lhoucine. After both parties rested, the trial court provided the jury with its final jury instructions, which included an instruction on intoxication that "[t]he defense of insanity cannot be successfully established simply on the basis that the condition resulted from the use of intoxicants or drugs where such use is not shown to be habitual or chronic." Following deliberations, the jury returned a verdict finding Laghaoui guilty of the above-named offenses, thereby rejecting Laghaoui's claims that he acted in self-defense and/or was not guilty by reason of insanity. The trial court then sentenced Laghaoui to an aggregate 36-year prison term.

{¶ 10} Laghaoui now appeals from his conviction, raising six assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED WHEN IT FOUND DEFENDANT-APPELLANT

- 4 -

TO BE COMPETENT TO STAND TRIAL.

{¶ **13**} In his first assignment of error, Laghaoui argues the trial court erred by finding him competent to stand trial. We disagree.

{¶ **14**} Due process and fundamental fairness demand that a criminal defendant who is not competent to stand trial not be tried and convicted of an offense. *State v. Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, ¶ 28 (12th Dist.), citing *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 114. Pursuant to R.C. 2945.37(G), "[a] defendant is presumed to be competent to stand trial." A defendant who claims incompetency to stand trial has the burden of proving his incompetence by a preponderance of the evidence. *State v. Bullocks*, 12th Dist. Warren No. CA2010-01-008, 2010-Ohio-2705, ¶ 6, citing *State v. Stanley*, 121 Ohio App.3d 673, 685 (1st Dist.1997); and *State v. Williams*, 23 Ohio St.3d 16, 19 (1986). "The preponderance of the evidence means that amount of evidence on one side which outweighs or is of greater probative value than that on the other." *State v. Puckett*, 12th Dist. Butler No. CA88-12-178, 1990 Ohio App. LEXIS 1463, *5 (Apr. 16, 1990).

{¶ **15**} An appellate court will not disturb a trial court's finding a defendant competent to stand trial if there was "'some reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against him.'" *State v. Dollar*, 12th Dist. Butler No. CA2012-01-002, 2012-Ohio-5241, ¶ 16, quoting *Williams* at 19. The adequacy of the "data relied upon by the expert who examined the [defendant] is a question for the trier of fact." *Id.* "Deference on these issues should be given 'to those who see and hear what goes on in the courtroom.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 46, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999).

{¶ **16**} It is undisputed that Laghaoui failed to object to the trial court's decision finding him competent to stand trial. Because Laghaoui "failed to object to the competency

finding at the trial court level, this court reviews this issue for plain error." *In re Stone*, 12th Dist. Clinton No. CA2002-09-035, 2003-Ohio-3071, ¶ 10. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error does not exist unless the error is obvious and but for the error, the outcome of the case would have been different. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39. "Notice of plain error is taken with the utmost caution and only under exceptional circumstances to prevent a manifest miscarriage of justice." *State v. Rogers*, 12th Dist. Butler No. CA2017-08-112, 2018-Ohio-1356, ¶ 24.

{¶ 17} Laghaoui argues the trial court erred by finding him competent to stand trial given Dr. O'Donnell's testimony that he was not competent to stand trial. In support, Laghaoui argues the trial court should have followed Dr. O'Donnell's "unequivocal opinion" that he was not competent to stand trial because her opinion was "uncontroverted by any other testimony or evidence." However, although Dr. O'Donnell was the lone witness to testify at the competency hearing, just as the trial court found, Dr. O'Donnell based her opinion on a "sense or a feeling" she had upon meeting with Laghaoui while he was being held in the Warren County Jail, during which he appeared guarded and exhibited a general unwillingness to engage in a conversation with her regarding the charges against him, the basis for those charges, and any possible defense(s) he may have had. As noted above, Dr. O'Donnell's opinion was limited to the information then available to her, the majority of which came from her discussion with Laghaoui's parents.

{¶ 18} As the trial court found, "that sense or feeling is not going to rise * * * to a preponderance of the evidence, and that that presumption [that Laghaoui was competent to stand trial] is not overcome." We find no error, let alone plain error, in the trial court's decision. This is because, as the Ohio Supreme Court has stated previously, "'[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the

charges against him and of assisting his counsel.'" *State v. Were*, 2008-Ohio-2762 at ¶ 47, quoting *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). In so holding, we note the generally well-established principle that "evidence tending to prove a fact does not necessarily become uncontroverted or uncontested simply because an opposing party does not present rebuttal evidence." *Collins v. Collins*, 12th Dist. Clinton No. CA2000-09-023, 2001 Ohio App. LEXIS 4620, *5 (Oct. 15, 2001). Therefore, because the trial court did not err by finding Laghaoui failed to meet his burden of proof requiring him to establish his incompetence by a preponderance of the evidence, Laghaoui's first assignment of error lacks merit and is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED WHEN IT FAILED TO INQUIRE AS TO DEFENSE COUNSEL'S POTENTIAL CONFLICT OF INTEREST.

{¶ 21} In his second assignment of error, Laghaoui argues the trial court erred by failing to inquire whether Attorney Quraishi had a possible conflict of interest given the fact that he was hired by Abdessadek, Laghaoui's father and one of the victims Laghaoui was charged with shooting. Laghaoui never raised the issue that his trial counsel had a possible conflict of interest. Nevertheless, "[w]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." *State v. Bai*, 12th Dist. Butler No. CA2010-05-116, 2011-Ohio-2206, ¶ 105, citing *State v. Gillard*, 64 Ohio St.3d 304 (1992), syllabus. Yet, even then, a trial court's failure to inquire into a possible conflict of interest does not automatically require "[a] retrial for failing to inquire into a possible conflict of interest is premature." *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997). "Rather, reversal is mandated only if an actual conflict is found." *Id.* This is because "the United States Constitution is violated by an actual conflict of interest, not a

possible one." *Id.*, citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-350, 100 S. Ct. 1708 (1980); and *State v. Manross*, 40 Ohio St.3d 180, 182 (1988).

{¶ 22} In order to establish that an actual conflict of interest existed, Laghaoui must demonstrate two elements. *State v. West*, 12th Dist. Butler No. CA2017-07-091, 2018-Ohio-640, ¶ 26. First, Laghaoui must show that "'some plausible alternative defense strategy or tactic might have been pursued.'" *Gillard*, 78 Ohio St.3d. at 552, quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985). Second, Laghaoui must "'establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.*, quoting *Fahey* at 836. Whether an actual conflict of interest existed is a mixed question of law and fact, subject to de novo review on appeal. *Id.* De novo appellate review means that this court independently reviews the record and affords no deference to a trial court's decision. *State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 10.

{¶ 23} After a full and thorough review of the record, even if this court were to assume the trial court failed to act upon its affirmative duty to inquire whether Attorney Quraishi had a possible conflict of interest, Laghaoui has failed to demonstrate that an actual conflict of interest existed. In reviewing Laghaoui's appellate brief, Laghaoui does not identify any plausible alternative defense or tactic that Attorney Quraishi might have pursued at trial, nor does Laghaoui allege that some other plausible alternative defense or tactic was not undertaken due to Attorney Quraishi' s other loyalties or interests, presumably to that of Laghaoui's father, Abdessadek. Simply stated, based on the record properly before this court, there is no evidence to suggest the fact that Abdessadek's hiring of Attorney Quraishi to represent Laghaoui impacted the defense strategy and tactics Attorney Quraishi pursued at trial; namely, that Laghaoui was acting in self-defense and/or was not guilty by reason of insanity. The defense strategy and tactics pursued by Attorney Quraishi were aligned with

those of both Laghaoui and Laghaoui's father, who we note was called to testify as the trial court's own witness without objection. Therefore, because Laghaoui has failed to establish that an actual conflict of interest existed in this case, Laghaoui's second assignment of error lacks merit and is overruled.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE CONVICTION MUST BE REVERSED DUE TO IMPROPER JURY INSTRUCTIONS.

{¶ 26} In his third assignment of error, Laghaoui argues the trial court erred by providing the jury with an instruction on intoxication; specifically, that "[t]he defense of insanity cannot be successfully established simply on the basis that the condition resulted from the use of intoxicants or drugs where such use is not shown to be habitual or chronic." In support of this claim, Laghaoui argues the instruction on intoxication was improper since his "strongest argument in his defense was that he was not guilty by reason of insanity." According to Laghaoui, by instructing the jury that intoxication could not serve as a basis for insanity when there was insufficient evidence of intoxication, "the trial court essentially provided the jury with a confusing instruction" that prejudiced his defense. We disagree.

{¶ 27} The record indicates Laghaoui failed to raise this objection to the trial court below, other than to say that "it adds a layer to the instruction [on the defense of not guilty by reason of insanity] that isn't really required." Pursuant to Crim.R. 30(A), Laghaoui's failure to raise this objection, stating specifically the matter objected to and the grounds of the objection, waived all but plain error on appeal. *State v. Glover*, 12th Dist. Fayette No. CA2016-11-016, 2017-Ohio-7360, ¶ 51. "With respect to an allegedly improper jury instruction, plain error exists only where, but for the error, the outcome of the trial would have been clearly different." *State v. Roberts*, 12th Dist. Butler No. CA2001-09-203, 2002-Ohio-4482, ¶ 26, citing *State v. Underwood*, 3 Ohio St.3d 12 (1983).

{¶ 28} The trial court "has discretion to determine whether the evidence is sufficient to require a jury instruction on intoxication." *State v. Nields*, 93 Ohio St.3d 6, 22 (2001), citing *State v. Wolons*, 44 Ohio St.3d 64 (1989). In determining whether there was sufficient evidence to support the trial court giving the jury an instruction on intoxication, such as the case here, "an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 35, citing *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997).

{¶ 29} After a full and thorough review of the record, we find no error, let alone plain error, in the trial court's decision to provide the jury with the challenged instruction on intoxication. The record is clear that the state requested the trial court instruct the jury on intoxication in direct response to Laghaoui's argument regarding his intoxication as it related to his not guilty by reason of insanity defense; namely, that he was experiencing psychosis and hallucinations on the night in question that was a direct result of his admitted prior use of synthetic cannabinoids. Therefore, as noted by the state, to allow Laghaoui to raise the issue of intoxication without also instructing the jury on the limits of that defense would have prejudiced the state and otherwise improperly instructed the jury on the law applicable to the case at bar. Accordingly, while Laghaoui himself denied being intoxicated on the night in question, because the issue of Laghaoui's intoxication was raised as part of his not guilty by reason of insanity defense, the trial court did not err by providing the jury with the challenged instruction at issue. Laghaoui's third assignment of error is without merit and overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} DEFENDANT-APPELLANT'S CONVICTION MUST BE REVERSED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 32} In his fourth assignment of error, Laghaoui argues he received ineffective assistance of counsel. We disagree.

{¶ 33} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. As a result, to prevail on an ineffective assistance of counsel claim, Laghaoui must show (1) that his trial counsel's performance fell below an objective standard of reasonableness and, (2) that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 34} As it relates to the first prong regarding his trial counsel's performance, Laghaoui must show Attorney Quraishi made errors so serious that he was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment to the United States Constitution. *State v. Miller*, 12th Dist. Clermont No. CA2011-04-028, 2012-Ohio-995, ¶ 27. On the other hand, as it relates to the second prong requiring a showing of prejudice, Laghaoui must establish that, but for Attorney Quraishi's errors, there is a reasonable probability that the result of trial would have been different. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 42. A "reasonable probability" is a probability that is sufficient to undermine confidence in the outcome. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 31, citing *Strickland* at 694.

{¶ 35} Laghaoui argues Attorney Quraishi was ineffective by requesting the trial court to instruct the jury on self-defense when his "primary defense" was that he was not guilty by reason of insanity. Laghaoui also argues Attorney Quraishi was ineffective for

failing to object to testimony "relating to chemicals associated with him" that were seized pursuant to a search of his residence. Laghaoui's claims lack merit for the record indicates these decisions were strategic and employed by Attorney Quraishi in an effort to fashion the best defense against the serious nature of the charges levied against Lagaoui, including that of attempted aggravated murder of a law enforcement officer. It is not this court's role to second guess these strategic decisions. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. Therefore, because the record does not support Laghaoui's claim that Attorney Quraishi was ineffective, nor contain any evidence to indicate Laghaoui suffered any resulting prejudice thereby, Laghaoui's fourth assignment of error lacks merit and is overruled.

{¶ 36} Assignment of Error No. 5:

{¶ 37} THE TRIAL COURT ERRED WHEN IT PERMITTED THE PROSECUTOR TO ESTABLISH THAT DEFENDANT-APPELLANT COULD NOT BE HOSPITALIZED IF FOUND NOT GUILTY BY REASON OF INSANITY.

{¶ 38} In his fifth assignment of error, Laghaoui argues the trial court erred by overruling his objection to testimony that the conditions he purportedly suffered from; namely, cannabis use disorder, generalized anxiety disorder, and schizotypal personality disorder, did not meet the criteria for involuntary hospitalization. In support of this claim, Laghaoui argues this was a "highly inappropriate line of questioning" that gave the jury the impression that "he would be on his way back home" if it found him not guilty by reason of insanity. However, contrary to Laghaoui's claim otherwise, a simple review of the record indicates this testimony was elicited by the state in order to counter Laghaoui's claim that he was suffering from a severe mental disease or defect on the night in question, thereby supporting his not guilty by reason of insanity defense. Pursuant to R.C. 2901.01(A)(14), because Laghaoui could be found not guilty by reason of insanity only if he proved, by a

preponderance of the evidence, that at the time of the offense he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts, we find nothing improper about the challenged testimony. Therefore, finding no error in the trial court's decision, Laghaoui's fifth assignment of error lacks merit and is overruled.

{¶ 39} Assignment of Error No. 6:

{¶ 40} THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION IN LIMINE PROHIBITING TESTIMONY FROM DEFENSE WITNESS FANTEGROSSI.

{¶ 41} In his sixth assignment of error, Laghaoui argues the trial court erred by granting the state's motion in limine, thereby excluding testimony from his intended expert witness, Dr. Fantegrossi, regarding the "effect that synthetic cannabinoids may have in causing psychosis" at trial. We disagree.

{¶ 42} A trial court's ruling on a motion in limine, including a motion to exclude expert testimony, is a "tentative, interlocutory, and precautionary ruling that reflects the trial court's anticipated treatment of an evidentiary issue that may arise at trial." *State v. Shalash*, 12th Dist. Warren No. CA2014-12-146, 2015-Ohio-3836, ¶ 30. In turn, "[a] motion in limine is directed to the inherent discretion of the trial judge, about an evidentiary issue that is anticipated, but has not yet been presented in full context." *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 27. Generally, a trial court's ruling on a motion in limine does not preserve for review any error the trial court may have made in ruling on the motion; rather, "any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or ruling on the record." *State v. Hensley,* 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 29. Therefore, "when a party files a motion in limine regarding the exclusion of evidence but fails to timely object at trial, this court will review the admission of such evidence under a plain error analysis." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 43.

{¶ 43} It is well-established that this court will not reverse a trial court's decision regarding the admission of evidence absent an abuse of discretion. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 96. "A reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 14, citing *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Napier*, 12th Dist. No. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 21.

{¶ 44} Although the challenged testimony was proffered on the record, the state argues this issue must be reviewed under a plain error analysis since Laghaoui failed to object to the trial court's decision to exclude Dr. Fantegrossi's testimony at trial. However, regardless of whether this issue is reviewed for plain error, or merely for error under an abuse of discretion standard, the record fully supports the trial court's decision to exclude Dr. Fantegrossi's expert testimony as it was not admissible under the United States Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786 (1983) and this state's evidentiary rule regarding the use of expert testimony as found in Evid.R. 702.

{¶ 45} In *Daubert*, the United States Supreme Court called upon federal district courts to act as a "gatekeeper" in determining whether expert testimony on scientific matters is admissible under Federal Rule of Evidence 702. To that end, the Supreme Court noted four factors the district courts were advised to consider in evaluating an expert's theory or technique; specifically, (1) whether it can be, and has been, tested; (2) whether it has been subjected to peer review and publication; (3) what its known, or potential, rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally

accepted in the field. *Id.* at 593-594. The Ohio Supreme Court later adopted these same four factors for analyzing issues arising under Evid.R. 702 in both civil and criminal cases. *See Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607 (1998); and *State v. Nemeth*, 82 Ohio St.3d 202 (1999).

{¶ 46} Pursuant to Evid.R. 702, a witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
>> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
>>
>> (2) The design of the procedure, test, or experiment reliably implements the theory;
>>
>> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 47} As noted above, Laghaoui argues the trial court erred by excluding Dr. Fantegrossi's testimony regarding the "effect that synthetic cannabinoids may have in causing psychosis." However, as it relates to the synthetic cannabinoids at issue in this case, XLR-11 and AB-CHMINACA, Dr. Fantegrossi specifically testified that he "couldn't tell" – but "wouldn't be surprised" – if there were psychotic effects associated with either substance. This is because, as Dr. Fantegrossi testified, there had not been any testing

done regarding these substances. According to the state, Dr. Fantegrossi's opinion serves as nothing more than an unreliable, untested assumption that was inadmissible under both *Daubert* and Evid.R. 702. We agree. In so holding, we reject Laghaoui's claim that Dr. Fantegrossi should have been allowed to testify about the effects of synthetic cannabinoids in general when, even then, Dr. Fantegrossi testified "the acute and chronic biological effects of" synthetic cannabinoids are "largely unknown." Therefore, because the trial court did not err, let alone commit plain error, by granting the state's motion in limine, thereby excluding Dr. Fantegrossi's testimony regarding the "effect that synthetic cannabinoids may have in causing psychosis" at trial, Laghaoui's sixth assignment of error lacks merit and is overruled.

{¶ 48} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.