[Cite as *State v. Ly*, 2020-Ohio-4265.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|                        |   |                                 |
|------------------------|---|---------------------------------|
| STATE OF OHIO,         | : |                                 |
| Appellee,              | : | CASE NO. CA2019-12-091          |
| - vs -                 | : | O P I N I O N<br>8/31/2020      |
|                        | : |                                 |
| MICHAEL LY,            | : |                                 |
| Defendant,             | : |                                 |
| and                    |   |                                 |
| LILLIAN WANG, et al.,  |   |                                 |
| Appellants.            |   |                                 |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018 CR 000799

D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Harry P. Hellings, Jr., 214 East 4th Street, Covington, Kentucky 41011, for appellants

**S. POWELL, J.**

{¶ 1}   Appellants, Michael Ly's wife, Lillian Wang ("Lillian"), and Ly's mother-in-law,

Yang Nu Wang ("Yang Nu"), appeal the decision of the Clermont County Court of Common

Pleas denying their petition for remission of property forfeited as a result of Ly's conviction for conspiracy to trafficking in marijuana. For the reasons outlined below, we affirm the trial court's decision.

{¶ 2} On March 29, 2019, Ly entered into a plea agreement and pled guilty to conspiracy to trafficking in marijuana, a fourth-degree felony, with a forfeiture specification. By pleading guilty, Ly acknowledged that over $200,000 in cash and $25,000 in money orders recovered from his restaurant, The Pacific Kitchen, as well as his Butler County home, were proceeds that were derived from his conspiracy to trafficking in marijuana. This included $34,811 in cash recovered from his and Lillian's master bathroom, $6,800 in cash recovered from his and Lillian's master bedroom, and $124,500 in cash recovered from a safe located in a back bedroom of his and Lillian's home.[1]

{¶ 3} On April 30, 2019, the trial court held a sentencing hearing and sentenced Ly to four years of community control. The trial court also ordered the above referenced cash and money orders forfeited to the Clermont County Narcotics Unit and the Hamilton County Drug Abuse Reduction Task Force, in equal shares, as proceeds derived from Ly's conspiracy to trafficking in marijuana.

{¶ 4} On May 29, 2019, Lillian and Yang Nu filed a petition for remission of forfeiture pursuant to R.C. 2981.04(E)(1). In support of their petition, Lillian alleged the cash recovered from her and Ly's master bathroom and master bedroom was proceeds from the sale of real estate in Ohio that she had "hidden" from Ly after they "experienced marital problems" in order "to protect herself and her children in the event of a divorce." Lillian also alleged that the cash recovered from the safe located a back bedroom in her and Ly's home

---

1. The trial court also ordered the forfeiture of a van alleged to have been purchased from the proceeds of Ly's conspiracy to trafficking in marijuana. The state later conceded that the van was not derived from those proceeds and therefore not subject to forfeiture.

belonged to her mother, Yang Nu, as proceeds from the sale of real estate in New York.

{¶ 5} On August 21, 2019, the trial court held a hearing on Lillian and Yang Nu's petition.[2] At this hearing, the trial court heard testimony from five witnesses. This included testimony from Ly, Lillian, and Yang Nu. After taking the matter under advisement, the trial court issued a decision denying Lillian and Yang Nu's petition. In so holding, the trial court noted that it had found most, if not all, of the testimony offered by Ly, Lillian, and Yang Nu lacked credibility. Specifically, as it relates to the credibility of Ly's testimony, the trial court stated:

> [Ly] pleaded guilty to Conspiracy to Trafficking in Marijuana, and guilty to the forfeiture specification which included the case at issue. By pleading to the specification, he acknowledged that the property in question was proceeds from marijuana trafficking. His testimony at the August 21, 2019 hearing that he wasn't aware of the $34,811.00 in cash in the master bathroom, which he used every day, is simply not credible. His testimony that he was unaware that his mother-in-law [Yang Nu] kept $124,500.00 in a safe in his house is likewise not credible in light of his plea to the forfeiture specification. He has a clear motive to avoid the forfeiture of the money by supporting his wife and mother-in-law's claims to the cash. Upon observing Ly's demeanor while testifying, and considering the reasonableness of his testimony in light of all of the evidence, the Court simply does not believe Ly's testimony concerning the stacks of $100 bills found inside his home when the search was conducted.

{¶ 6} Continuing, as it relates to the credibility of Lillian's testimony, the trial court stated:

> Likewise, the Court does not find [Lillian's] testimony to be credible. She testified that in 2013-2014, she hid approximately $35,000 in $100 bills under the sink in the master bathroom to keep it from her husband, [Ly], in the event he divorced her. Later, she testified [that] she hid the money under the sink approximately a year before the search of her house on January 31, 2018. The cash remained there until the house was

_____

2. Pursuant to R.C. 2981.04(E)(3), "[t]o the extent practicable and consistent with the interests of justice," the trial court was to have held the hearing on Lillian and Yang Nu's petition within 30 days after the petition was filed. However, as noted by the trial court, both parties agreed to hold the hearing on August 21, 2019 after they experienced difficulty in obtaining a Chinese interpreter and to accommodate counsels' otherwise busy schedules.

searched on January 31, 201[9]. Prior to the search, she was asked if there was any money in the house, and she did not inform the officers of the $34,811.00 found in the bathroom. She was dishonest with law enforcement concerning the presence of the cash she now claims is hers. She testified that she did not disclose the money because she didn't want Ly to know she had hid[den] money from him. Upon observing [Lillian's] demeanor while testifying, and considering the reasonableness of her testimony in light of all of the evidence, the Court does not find [Lillian] to be a credible witness, and does not believe her testimony that the cash under the sink was proceeds from the sale of property in 2015. She testified both on direct and cross examination that she put the money under the sink in 2013-2014, which was before the Blue Ash home was sold in 2015.

{¶ 7} Finally, as it relates to the credibility of Yang Nu's testimony, the trial court initially stated:

[Yang Nu], [Lillian's] mother, claims that the $124,500 in cash located in the safe in her bedroom was her money, and not the proceeds of [Ly's] drug trafficking. She testified that the money was from life insurance proceeds when her husband passed in 2004, and from the sale of New York property in September, 2015. * * * She testified that she put $145,000.00 in cash in the safe in October, 2017, and that the money was a wedding gift for her grandson. She testified that she then returned to China in November of 2017. She testified she withdrew money from the bank little by little, in $100.00 bills, and then withdrew a lump sum of approximately $80,000 before returning to China. She indicated that the money in the safe came from these bank withdrawals. She offered no bank records to verify these withdrawals. The last bank statement provided for [Yang Nu] was for the period of September 26 through October 27, 2015.

{¶ 8} The trial court then stated:

The Court accepts that [Yang Nu] received over $219,000.00 at the September 2015 closing on the sale of the New York property. However, the Court does not believe that the $124,500.00 found in the safe consisted of those funds. The Court does not find [Yang Nu's] testimony that she put the money in the safe because she didn't trust banks to be credible. Her explanation that she withdrew money "little by little" in $100.00 bills, and then withdrew a lump sum of $80,000.00 before returning to China is not corroborated by the bank records provided. Upon observing [Yang Nu's] demeanor while testifying, and considering the reasonableness of her testimony

in light of all of the evidence, the Court does not find her testimony as to the source of the $124,500.00 found in the safe to be credible. [Yang Nu] has not proven by a preponderance of the evidence that the $124,500.00 found in the safe was hers.

{¶ 9} Lillian and Yang Nu now appeal the trial court's decision denying their petition for remission of property, raising the following single assignment of error.

{¶ 10} THE TRIAL COURT ERRED IN DENYING THE APPELLANTS REMISSION OF FORFEITURE REQUEST.

{¶ 11} In their single assignment of error, Lillian and Yang Nu argue the trial court erred by denying their petition for remission of forfeiture. We disagree.

{¶ 12} "R.C. 2981.04(E) grants the trial court limited jurisdiction to amend the final forfeiture order under the procedures set forth in that statutory section." *State v. Waycaster*, 8th Dist. Cuyahoga No. 108476, 2020-Ohio-1604, ¶ 12. To that end, any person, other than the offender whose conviction is the basis of the forfeiture order, may petition the trial court that issued the order for a hearing to "adjudicate the validity of the person's alleged interest in the [forfeited] property." R.C. 2981.04(E)(1). In other words, "R.C. 2981.04(E)(1) allows any person (other than the offender) who asserts a legal interest in the forfeited property to petition the court for a hearing to adjudicate the validity of that interest after the court has entered the forfeiture order." *State ex rel. West v. McDonnell*, 139 Ohio St.3d 115, 2014-Ohio-1562, ¶ 20. "If, after the hearing, the court determines that the interested person proved by a preponderance of the evidence that the interest in the property [was] vested in the petitioner and not the offender, the trial court 'shall amend its forfeiture order' under R.C. 2981.04(F)(1)." *Waycaster*.

{¶ 13} "'The preponderance of the evidence means that amount of evidence on one side which outweighs or is of greater probative value than that on the other.'" *State v. Laghaoui*, 12th Dist. Warren No. CA2017-06-098, 2018-Ohio-2261, ¶ 14, quoting *State v.*

*Puckett*, 12th Dist. Butler No. CA88-12-178, 1990 Ohio App. LEXIS 1463, *5 (Apr. 16, 1990). This is essentially the same standard that is applied in a manifest weight of the evidence challenge. *See State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14 (a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other"); *see also State v. Simpson*, 1st Dist. Hamilton No. C-100789, 2011-Ohio-4578, ¶ 15 ("[t]he phrase, 'greater weight of the evidence,' equates with a preponderance of the evidence"). "When reviewing a judgment based on a preponderance of the evidence, we will not reverse the judgment if there is 'some competent, credible evidence going to all the essential elements of the case.'" *State v. Johnson*, 11th Dist. Trumbull No. 2009-T-0042, 2010-Ohio-1970, ¶ 28, quoting C*.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 (1978).

{¶ 14} Lillian and Yang Nu initially argue that the trial court erred by denying their petition by finding their testimony lacked credibility. However, unlike this court on appeal, it is the trial court that is in the best position to resolve factual questions and evaluate witness credibility. The trial court, as the trier of fact, is also free to believe all, part, or none of the testimony offered. This includes Ly's testimony that he was unaware that there was $34,811 in cash stored underneath the sink in his and Lillian's master bathroom, as well as Ly's testimony alleging he did not know his mother-in-law, Yang Nu, kept $124,500 in cash in a safe located in the back bedroom of his and Lillian's home. The trial court choose to discredit Ly's testimony, as well as most, if not all, of the testimony offered by Lillian and Yang Nu. The trial court did this after observing their demeanor in relation to the reasonableness of their testimony in light of the evidence presented. This court will not substitute its evaluation of Ly's, Lillian's, and Yang Nu's credibility for that of the trial court.

{¶ 15} Lillian and Yang Nu also argue that the trial court erred by denying their

petition since the state offered no evidence "in contradiction to their claim to the currency," no evidence that they were "in some manner complicit" in Ly's conspiracy to trafficking in marijuana, and no evidence that they "received proceeds therefrom with guilty knowledge." However, as the petitioners, the burden of proof was on Lillian and Yang Nu to prove that they were entitled to the forfeited property. *Waycaster*, 2020-Ohio-1604 at ¶ 12 (the burden of proof is on the petitioner to prove by a preponderance of the evidence "that the interest in the property vested in the petitioner and not the offender * * * ").  Therefore, because it was Lillian and Yang Nu who carried the burden of proof, the state was under no obligation to present any evidence, let alone evidence that Lillian and Yang Nu were "in some manner complicit" in Ly's conspiracy to trafficking in marijuana or that they "received proceeds therefrom with guilty knowledge."  Accordingly, finding no error in the trial court's decision denying Lillian and Yang Nu's petition for remission of forfeiture, Lillian and Yang Nu's single assignment of error lacks merit and is overruled.

{¶ 16} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.